## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02471-MSK-KMT

THOMAS SILVERSTEIN,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN,
JOYCE CONLEY,
MICHAEL NALLEY, and
RON WILEY,

     Defendants.

---

## PARTIAL MOTION TO DISMISS BY OFFICIAL CAPACITY DEFENDANTS

---

     Defendants, in their official capacities, through undersigned counsel, hereby move to

dismiss Claims 1, 2, 3, 4, and 7 of the Amended Complaint in this action pursuant to Fed. R. Civ.

P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[1]  First, Plaintiff fails to state a procedural due process

claim relating to his restriction on contact with other inmates (Claim 1), his transfer to the

Administrative Maximum Facility in Florence, Colorado (Claim 2), or in participating in the

Step-Down Program (Claim 3).  Second, Plaintiff fails to state an Eighth Amendment claim in

Claim 4 because the restriction on contact with other inmates is not cruel and unusual

---

     [1]  Because Defendants have filed a motion pursuant to Rules 12(b)(1) and 12(b)(6),
Defendants have not yet filed an Answer to the Amended Complaint.  Once this motion is
decided, Defendants will serve a responsive pleading to all surviving claims within ten days after
notice of the Court's decision.  See Fed. R. Civ. P. 12(a)(4); 5B Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1346 (3d ed. 2004).

punishment.  Finally, Plaintiff lacks standing to bring an access to the courts claim in Claim 7.

Thus, this Court should dismiss Claims 1, 2, 3, 4, and 7 of Plaintiff's Amended Complaint.

## FACTS

The following facts are drawn from the allegations in the Amended Complaint (Doc. 41).

Plaintiff is an inmate presently incarcerated at the United States Penitentiary, Administrative

Maximum ("ADX"), in Florence, Colorado.  See Doc. 41 at ¶ 3.  The named Defendants in the

Amended Complaint are the Federal Bureau of Prisons ("BOP"); Harley Lappin, the Director of

the BOP; Joyce Conley, the Assistant Director for the Correctional Programs Division of the

BOP; Michael Nalley, the Regional Director of the North Central Region of the BOP; and Ron

Wiley, the Warden of the ADX.  Id. at ¶¶ 4-8.  The BOP is sued only in its official capacity.  Id.

at ¶ 9.  Defendants Lappin, Conley, Nalley, and Wiley are sued in both their official and

individual capacities.[2]  Id. at ¶ 10.

Plaintiff was first incarcerated in a BOP facility in 1978, when he was placed in the

general population at the United States Penitentiary ("USP") at Leavenworth, Kansas.  Id. at ¶¶

12-13.  While at USP Leavenworth, Plaintiff murdered inmate Danny Atwell, for which he later

was convicted of first degree murder.[3]  Id. at ¶ 14.  In 1980, as a result of the murder, BOP

---

[2]  Prior to the filing of the Amended Complaint, Plaintiff had raised no individual
capacity claims.  See Doc. 1.  Plaintiff has now amended his Complaint to assert claims against
the individuals in their individual capacities.  See Doc. 41.  The individual capacity Defendants
have not been served in this matter.  Nor does undersigned counsel have representation authority
for the individual capacity Defendants at this time.  Thus, only the official capacity Defendants
are required to respond to Plaintiffs Amended Complaint at this time.  See Fed. R. Civ. P. 4(I),
15(a).

[3]  Plaintiff's conviction for the murder of Danny Atwell was subsequently overturned by
the Tenth Circuit.  United States v. Silverstein, 737 F.2d 864 (10th Cir. 1984).  The Tenth Circuit
(continued...)

moved Plaintiff from USP Leavenworth to USP Marion, in Illinois, where Plaintiff was incarcerated in the Control Unit. <u>Id.</u> at ¶¶ 14-15. "At that time, the conditions in the Marion Control Unite were the highest level of security in the Federal prison system." <u>Id.</u> at ¶ 15. In 1981, while incarcerated in the USP Marion Control Unit, Plaintiff murdered inmate Robert Chappelle, for which he was later convicted. <u>Id.</u> at ¶ 16; <u>see also</u> <u>United States v. Silverstein</u>, 732 F.2d 1338 (7th Cir. 1984) (describing case and affirming conviction). In 1982, Plaintiff murdered inmate Raymond Smith, for which he was later convicted. <u>See</u> Doc. 41 at ¶ 26; <u>United States v. Fountain</u>, 768 F.2d 790, 793 (7th Cir. 1985) (noting that Silverstein pled guilty to this murder). In 1983, while still incarcerated in the Marion Control Unit – "the highest level of security in the Federal prison system" – Plaintiff murdered prison guard Merle Clutts, for which he was later convicted. <u>See</u> Doc. 41 at ¶¶ 15; <u>see also</u> <u>United States v. Fountain</u>, 768 F.2d 790 (describing case and affirming conviction).

In 1983, after these four murders, BOP moved Plaintiff to USP Atlanta, Georgia, and placed Plaintiff on what he refers to as "no human contact" status. <u>See</u> Doc. 41 at ¶¶ 31, 45. The allegations in Plaintiff's Amended Complaint indicate that Plaintiff has had contact with numerous individuals on a regular basis since 1983. First, Plaintiff's Amended Complaint indicates that Plaintiff has been allowed outside visitors. Plaintiff's Amended Complaint describes the visiting room at USP Leavenworth as being dual purpose for visitation "when he had visitors" and for recreation." <u>Id.</u> at ¶ 104. Plaintiff also describes his visiting room at the ADX, and indicates that attorneys have visited him there. <u>Id.</u> at ¶¶ 184-86. And Plaintiff's

---

[3](...continued)
held that "although the properly admissible evidence was sufficient to support the defendant's conviction," errors may have influenced the jury. <u>Id.</u> at 868. The case was never retried.

Amended Complaint indicates that throughout his incarceration, he has been in contact with BOP staff, including daily contact with prison guards and regular contact with doctors, the Warden, and Regional Director.  See, e.g., id. at ¶¶ 160, 193.  Plaintiff characterizes this confinement as "no human contact," which appears to refer to the fact that since the deaths of Atwell, Chappelle, Smith, and Clutts, Plaintiff is not allowed contact with other inmates.

At USP Atlanta, Plaintiff was incarcerated in a special cell designed for him.  Id. at ¶ 46.  In 1987, following a riot at USP Atlanta, BOP moved Plaintiff to USP Leavenworth, in Kansas.  Id. at ¶¶ 75, 79.  At USP Leavenworth, Plaintiff was incarcerated in a cell specially designed for him.  Id. at ¶¶ 91, 99.  Plaintiff remained at USP Leavenworth until 2005, when he was transferred to the ADX, in Florence, Colorado.  Id. at ¶ 135.  Plaintiff is currently incarcerated in the "Z" Unit of the ADX.  Id. at ¶ 135.  At the ADX, Plaintiff is confined to a solitary cell twenty-three hours a day.  Id. at ¶ 171.  His cell has a bed, sink, toilet, shower, and a small window.  Id. at ¶¶ 171-74.  Plaintiff eats his meals alone, has limited exercise, cannot communicate with other inmates, and is under twenty-four hour video surveillance.  Id. at ¶¶ 175-80.

Plaintiff brings seven claims for relief.  In Claim 1, Plaintiff contends that the restriction on his contact with inmates is a violation of his procedural due process rights.  Id. at 33 (caption for Claim 1).  In Claim 2, Plaintiff alleges that Defendants' act of transferring him to the ADX in 2005 violated his procedural due process rights.  Id. (caption for Claim 2).  In Claim 3, Plaintiff alleges that Defendants' decision not to allow Plaintiff to participate in the Step-Down Program is a violation of his procedural due process rights.  Id. at 34 (caption for Claim 3).  In Claim 4, Plaintiff contends that his restriction on contact with other inmates is a violation of the Eighth

-4-

Amendment's proscription against cruel and unusual punishment.  Id. at 35 (caption for Claim 4).

In Claims 5 and 6, Plaintiff contends that Defendants' restrictions affect Plaintiff's spiritual

practices and violate the Free Exercise Clause and the Religious Freedom Restoration Act,

respectively.  Id. at 36 (captions for Claims 5 and 6).  Finally, in Claim 7, Plaintiff alleges that

Defendants violated Plaintiff's First Amendment right to private consultation with his attorney

and his right of access to the courts.  Id. at 26 (caption for Claim 7).  For his official capacity

claims, Plaintiff seeks only declaratory and prospective injunctive relief.

## ARGUMENT

### I.     Rule 12(b)(6) Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state "enough

facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550

U.S. ----, 127 S. Ct. 1955, 1974 (2007).  The complaint must contain more than "a statement of

facts that merely creates a suspicion that the pleader might have a legally cognizable right of

action."  5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1216 (3d ed.

2004) (quoted in Bell Atlantic, 127 S. Ct. at 1965).  The Court must accept as true only the

well-pleaded allegations of the complaint and must construe them in the light most favorable to

the plaintiff.  Grossman v. Novell, Inc., 120 F.3d 1112, 1118 (10th Cir. 1997).  But "[i]t is not …

proper to assume that the [plaintiff] can prove facts that it has not alleged … ." Associated Gen.

Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983) (quoted in Bell

Atlantic, 127 S. Ct. at 1969 n.8).

"When the allegations in a complaint, however true, could not raise a claim of entitlement

to relief, this basic deficiency should be exposed at the point of minimum expenditure of time

and money by the parties and the Court." <u>Bell Atlantic</u>, 127 S. Ct. at 1966 (internal quotations omitted). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." <u>Lane v. Simon</u>, 495 F3d 1183, 1186 (10th Cir. 2007) (citing <u>Bell Atlantic</u>, 127 S. Ct. at 1965); <u>see also</u> <u>Smith v. Plati</u>, 258 F.3d 1167, 1176 (10th Cir. 2001) (noting that "[a] federal constitutional question must exist not in mere form, but in substance, and not in mere assertion, but in essence and effect" and affirming district court's dismissal for failure to state a claim). Thus, in pleading, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal quotations omitted).

## II.    Plaintiff Cannot Establish a Procedural Due Process Violation in Claims 1, 2, or 3

### A.    Burden of Proof

Plaintiff bears the burden of establishing a procedural due process violation. <u>See</u> <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996) (noting that to prevail the inmate must establish the due process violation).

### B.    Elements of Procedural Due Process

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." <u>Chambers v. Colo. Dep't of Corrections</u>, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted). "A person alleging that he has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." <u>Zwygart v. Bd. of County Comm'rs</u>, 483 F.3d

1086, 1093 (10th Cir. 2007) (internal quotations omitted); see also Kentucky Dep't of Corr. v.

Thompson, 490 U.S. 454, 460 (1989) (setting forth elements of procedural due process

violation).

### 1.    Element:  Liberty or Property Interest

For federal prisoners, a liberty or property right exists only where an interference with

that right would impose an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  "The Due

Process Clause standing alone confers no liberty interest in freedom from state action taken

'within the sentence imposed.'"  Id. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Specifically, the Due Process Clause does not protect an inmate against transfer from one

institution to another: "[t]hat life in one prison is much more disagreeable than in another does

not in itself signify that a [Fifth] Amendment liberty interest is implicated when a prisoner is

transferred to the institution with the more severe rules."  Meachum v. Fano, 427 U.S. 215, 225

(1976).  "Transfer of an inmate to less amenable and more restrictive quarters for nonpunitive

reasons is well within the terms of confinement ordinarily contemplated by a prison sentence,"

Hewitt, 459 U.S. at 468.

In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court found that the Ohio

State Penitentiary supermax prison did impose an atypical and significant hardship in relation to

the ordinary incidents of prison life.  Id. at 224.  The Court held that a liberty interest was

implicated because of the conditions of solitary confinement plus two additional factors: (1)

placement was for an indefinite duration reviewed only annually; and (2) placement disqualified

an otherwise eligible inmate from parole consideration.  Id.  "While any of these conditions

standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id.

After Wilkinson, the Tenth Circuit has held that four non-dispositive factors should be used to determine whether a liberty interest is implicated. These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in Wilkinson; and (4) the placement is indeterminate (in Wilkinson the placement was reviewed only annually)." Estate of DiMarco v. Wyo. Dept. of Corr., 473 F.3d 1334, 1342 (10th Cir. 2007). The DiMarco court noted that "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." Id.

## 2.    Element:  Appropriate Level of Process

Inmates are not entitled to the protections of procedural due process without a liberty or property interest. Sandin, 515 U.S. at 487. If a liberty or property interest is implicated, the "requirements of due process are flexible and call for such procedural protections as the particular situation demands." Wilkinson, 545 U.S. at 224 (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Courts consider the three factors established in Mathews v. Eldridge, 424 U.S. 319(1976), to determine the level of process that is due.[4] Wilkinson, 545 U.S. at 224.

---

[4]  The three Mathews factors are: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

### C.    Elements Not Supported by Amended Complaint (Claim 1):

#### 1.    Element:  Liberty Interest

Plaintiff's First Claim alleges that "Defendants violated Plaintiff's liberty interest by indefinitely confining him to a 'no human contact' isolation status."  (Doc. 41 at 33, caption for Claim 1.)[5]  Although Plaintiff refers to his status as "no human contact," the Amended Complaint makes clear that his status is actually a restriction on contact with other inmates.  See supra at 3-4.  Plaintiff appears to be asserting that Defendants have denied Plaintiff's Fifth Amendment right to procedural due process by denying Plaintiff contact with other inmates.  This Court should dismiss Plaintiff's First Claim because it fails to state a claim.

Plaintiff alleges that his restriction on contact with other inmates "prevents him from being considered for parole" (Doc. 41 at ¶ 230), and that Plaintiff was eligible for parole in 1992, id. at ¶ 122.  Plaintiff's allegation that his restriction on contact with other inmates prevents him from being considered for parole is false, but because the Court must accept the allegations in Plaintiff's Amended Complaint as true, Plaintiff's allegations are sufficient to establish a liberty interest.  C.f. Sandin, 515 U.S. at 484 (liberty interests implicated by "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")

---

[5]  Throughout the Amended Complaint, Plaintiff alleges that BOP violated various regulations and rules relating to Plaintiff's Claims.  See, e.g., Doc. 41 at ¶¶ 147-48, 151-52, 157-58.  These allegations are irrelevant to Plaintiff's claims.  Even if BOP did violate a regulation or rule, "[t]he regulations themselves do not create an enforceable procedural right."  Estate of DiMarco v. Wyo. Dep't of Corr., 473 F.3d 1334, 1341 (10th Cir. 2007) (emphasis added).

### 2.    Element:  Appropriate Level of Process

Even assuming Plaintiff can establish a liberty interest in his restriction on contact with other inmates, Plaintiff's allegations fail to show that he was not afforded an appropriate level of process.  See Zwygart, 483 F.3d at 1093.  Plaintiff alleges that in 1983, he received "no notification" and "no opportunity to be heard in opposition" to his restriction on contact with inmates.  (Doc. 41 at ¶¶ 29, 35, 37.)   But Plaintiff also alleges that since 1992, his restriction on contact with inmates has been reviewed every six months by the Regional Director of the BOP, the Warden of the ADX, and various other BOP officials.  Id. at ¶¶ 159-60.  The Amended Complaint makes clear that Plaintiff is present at these reviews and is able to ask questions.  See id. at ¶ 160.

Moreover, at any point from 1983 forward, Plaintiff could have employed the BOP administrative remedy process to challenge his restriction on contact with other inmates. Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, inmates are required to use the BOP administrative remedy program prior to filing suit; it is designed to "solve problems and be responsive to issues inmates raise."  Kikumura v. Osagie, 461 F.3d 1269, 1281, 1284 (10th Cir. 2006).

The BOP maintains a four-step administrative remedy program, by which inmates such as Plaintiff may raise grievances.  28 C.F.R. §§ 542.10-19 (2007).  In Step 1, the inmate must attempt informal resolution of his complaint with the appropriate BOP staff member.  Id. at § 542.13.  Assuming no satisfactory resolution is achieved, the inmate must file an Administrative Remedy Request ("Form BP-9") within 20 calendar days of the event giving rise to the grievance. Id. at § 542.14.  If the inmate is dissatisfied with the outcome at Step 2, the inmate must file an

appeal ("Form BP-10") to the Regional Director within 20 days. Id. at § 542.15(a). If the Step 3

appeal is unsuccessful, the inmate must file an appeal (Form BP-11") to the General Counsel

within 30 days. Id. at § 542.15(a). The appeal to the General Counsel is the final administrative

stage, and only upon its conclusion has the inmate exhausted the available administrative remedy

scheme with respect to the claim at issue. See Kikumura v. Osagie, 461 F.3d at 1282.

The BOP administrative remedy process – complete with a series of requests, responses, and

appeals – provides a sufficient level of procedural due process to address Plaintiff's restriction on

contact with inmates. See Travieso v. Fed. Bureau of Prisons, 217 F. App'x 933, 935 (11th Cir.

2007) (holding that inmate had no liberty interest in lost credit for time over-served, and even if

inmate did have liberty interest "the BOP's administrative remedy process provided [him] with

any required due process").

Plaintiff admits that the administrative remedy process is available to him, and that has

used it. (Doc. 41 at ¶ 128.) Therefore, because Plaintiff cannot establish that an appropriate

level of process was not afforded, Claim 1 should be dismissed.

### C.    Elements Not Supported by Amended Complaint (Claim 2):

In Claim 2, Plaintiff alleges that Defendants "violated Plaintiff's liberty interest by

transferring him to ADX." (Doc. 41 at 33, caption for Claim 2.)

#### 1.    Element: Liberty Interest

Plaintiff has no liberty interest in avoiding being transferred from another BOP institution

to ADX. First, pursuant to 18 U.S.C. § 3621(b), BOP has discretion to designate an inmate for

placement at any available facility. See 18 U.S.C. 3621(b) (2007) ("The Bureau may designate

any available penal or correctional facility … "). In addition, the Due Process Clause does not

protect an inmate against transfer from one institution to another.  See Sandin v. Conner, 515

U.S. at 480; Meachum, 427 U.S. at 225; Hewitt, 459 U.S. at 468.

Plaintiff attempts to allege a liberty interest for his Second Claim by merely parroting the

language of Sandin.  See Doc. 41 at ¶ 234 (transfer to ADX is "an atypical and significant

hardship in relation to the ordinary incidents of prison life.").  Such a conclusory allegation is

not sufficient to state a claim.  See Lane, 495 F.3d at 1186.

### 2.    Element: Appropriate Level of Process

Even if Plaintiff could establish a liberty interest in his transfer to the ADX, Plaintiff has

not demonstrated that he was not afforded an appropriate level of process.  See Zwygart, 483

F.3d at 1093.  Plaintiff alleges that "BOP officials never notified Plaintiff of their decision," and

that the transfer occurred without "notice, hearing, or justification."  (Doc. 41 at ¶¶ 143, 237.)

But Plaintiff was clearly on notice of his transfer to ADX once it occurred.  At any point from the

date of that transfer forward, Plaintiff could have employed the BOP administrative remedy

process to challenge his transfer to ADX, and that process satisfies the requirements of due

process, as argued above.

Therefore, because Plaintiff's allegations do not establish a liberty interest in his location

of imprisonment, or, even assuming a liberty interest, that an appropriate level of process was not

afforded, Claim 2 should be dismissed.

### D.    Elements Not Supported by Amended Complaint (Claim 3):

In Claim 3, Plaintiff alleges Defendants "violated Plaintiff's liberty interest by failing to

admit him into the Step-Down Program." (Doc. 41 at 34, caption for Claim 3.)

### 1.   Element: Liberty Interest

Given that transfer of an inmate to more restrictive quarters does not implicate a liberty interest, <u>Hewitt</u>, 459 U.S. at 468, Plaintiff has no liberty interest in being transferred to less restrictive quarters.  Plaintiff's allegations in support of Claim 3 are limited to a conclusory assertion that Plaintiff is eligible for Step-Down.  (Doc. 41 at ¶ 148.)  Nowhere in the Amended Complaint does Plaintiff provide factual allegations to describe how or in what manner not being placed in the Step-Down Program is an "atypical and significant hardship on ]Plaintiff] in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484.  Indeed, to the contrary, Plaintiff acknowledges in the Amended Complaint that the Step-Down Program is a means of transferring out of the ADX.  (Doc. 41 at ¶ 146.)   Plaintiff's mere assertion that he has a liberty interest in participating in the Step-Down Program is no sufficient to show a liberty interest in participation in the Step-Down Program.  See <u>Smith v. Plati</u>, 258 F.3d at 1176.  Plaintiff has not provided "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic</u>, 127 S. Ct. at 1974.

Without a liberty or property interest, Plaintiff is not entitled to the protections of procedural due process.  <u>Sandin</u>, 515 U.S. at 487.  Therefore, because Plaintiff cannot establish a liberty interest in participation in the Step-Down Program, Claim 3 should be dismissed.

### 2.   Element: Appropriate Level of Process

In addition to failing to establish a liberty or property interest, Plaintiff does not allege with sufficient specificity any facts showing that adequate process has been denied.  Plaintiff makes no allegations of procedural deficiencies with respect to the Step-Down Program.

Plaintiff's Claim 3 is at its core an attack on the outcome of the Step Down process: he alleges that he should have been placed into the Step-Down Program because he was eligible to enter the Step Down unit. See, e.g., Doc. 41 at ¶ 148 (Plaintiff has "fully complied with all standards"). Indeed, the caption for Claim 3 indicates that Plaintiff is alleging a violation of due process brought about by Defendants' "failure to admit [Plaintiff] into [the] Step-Down Program." Id. at 34. This challenge to the outcome of the review – but not the process afforded during that review – fails to state a cognizable procedural due process claim. See, e.g., Ajaj v. United States, 2006 WL 1305198, *10 (D. Colo. 2006) ("Instead, his allegations suggest that he simply is unhappy with the ultimate decision not to place him in a less restrictive housing assignment. Therefore, his allegations are conclusory and thus insufficient to support a prima facie procedural due process violation.") (attached as Ex. A-1). Because Plaintiff cannot establish a liberty interest in the Step-Down Program or that he was not afforded an appropriate level of process, Claim 3 should be dismissed.

## III. Plaintiff Cannot Establish an Eighth Amendment Violation in Claim 4

In Claim 4, Plaintiff alleges that his "indefinite 'no human contact' status constitutes cruel an unusual punishment" in violation of the Eighth Amendment. See Doc. 41 at ¶ 247 and 35 (caption for Claim 4). Although Plaintiff refers to his status as "no human contact," the Amended Complaint makes clear that his status is actually "no inmate contact." See supra at 3-4. Plaintiff's allegations fail to state a claim that he has suffered cruel and unusual punishment, and therefore Claim 4 should be dismissed.

### A.    Elements of Conditions of Confinement

The Eighth Amendment "prohibits penalties that are grossly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Hutto v. Finney, 437 U.S. 678, 685 (1978) (internal citations and quotations omitted).  Courts measure cruel and unusual punishment allegations against prison officials' Eighth Amendment duty to maintain "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

A plaintiff claiming a violation of the Eighth Amendment must satisfy both an objective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind).  Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991); Kikumura v. Osagie, 461 F.3d at 1291.

The objective component of the Eighth Amendment test requires allegations that an inmate was deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  "To the extent that [an inmate's] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.  "Mere 'inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment.'" Caldwell v. Miller, 790 F.2d 589, 600-01 n.16 (7th Cir. 1986) (quoting Bono v. Saxbe, 620 F.2d 609, 614 (7th Cir. 1980)).

The subjective component of the Eighth Amendment test requires that the prison officials have a culpable state of mind.  Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001) (citing Wilson, 501 U.S. at 297, 303).  The official must "know[ ] of and disregard[ ] an excessive risk

to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of harm exists, and he must draw the inference." Perkins v.

Kansas Dept. of Corrections, 165 F.3d 803, 809 (10th Cir. 1999) (quoting Farmer, 511 U.S. at

837). "[O]bduracy and wantonness" on the part of the prison officials must be shown. Whitley

v. Albers, 475 U.S. 312, 319 (1986).

    Courts have consistently held that conditions of restricted contact with inmates – such as

at the ADX – do not violate the Eighth Amendment. In Hill v. Pugh, 75 F. App'x 715 (10th Cir.

2003), the prisoner contended that the conditions at the ADX are cruel and unusual in that the

prisoner was isolated in his cell twenty-three hours a day for five days a week and twenty-four

hours the remaining two days, and that the resulting sensory deprivation amounted to cruel and

unusual punishment. Id. at 721. The Tenth Circuit stated that the situation described by the

prisoner "shows neither an unquestioned and serious deprivation of basic human needs, nor

intolerable or shocking conditions." Hill, 75 F. App'x at 721 (internal quotations omitted) (citing

Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Other courts have similarly held that the

conditions of confinement typical of the ADX do not constitute cruel and unusual punishment.

See, e.g., Smith v. Romer, 107 F.3d 21, 1997 WL 57093 (10th Cir. 1997) (unpublished) (holding

that allegations of twenty-three hour per day confinement, meals in cells, limited vocational,

educational, and recreational services offered through television, and light always on failed to

state a claim under the Eighth Amendment) (attached as Ex. A-2); Bruscino v. Carlson, 854 F.2d

162, 164-65, 166-67 (7th Cir. 1988) (holding that conditions of confinement at USP Marion

Control Unit did not violate the Eighth Amendment and "must be evaluated against the

background of an extraordinary history of inmate violence and with proper regard for the limited competence of federal judges to micromanage prisons").

The "length of time is 'simply one consideration among many' in the Eighth Amendment inquiry." In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (citing Hutto, 437 U.S. at 687). "[I]solation from companionship, restriction on intellectual stimulation and prolonged inactivity" do not make the confinement unconstitutional. Sweet v. S.C. Dep't of Corr., 529 F.2d 854, 861 (4th Cir. 1975).

### B. Elements Not Supported by Amended Complaint: Cruel and Unusual Punishment

Plaintiff's restriction on contact with other inmates is not cruel and unusual in violation of the Eighth Amendment. First, with respect to the objective component, Plaintiff does not allege facts showing that he has been deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Plaintiff alleges that his current incarceration at the ADX "Z" Unit represents "extreme solitary confinement and reduced environmental stimulation." Doc. 41 at ¶ 170. However, Plaintiff's detailed factual allegations about his conditions of confinement in the "Z" Unit – that he has a single cell containing a sink, toilet, and shower, mirror, and small window, lack of contact with other inmates, solitary exercise and meals, and limited exercise – are typical of the general population at the ADX. (Doc. 41 at ¶¶ 171-80.) Plaintiff does not specifically allege that any of his minimal physical requirements – i.e., food, shelter, clothing and warmth – have not been met. The only possible exception to this is alleged to have occurred while Plaintiff was incarcerated at USP Atlanta, between 1983 and 1987, when Plaintiff alleges he experienced "extreme conditions of hot and cold." Id. at ¶ 50. Plaintiff does not allege that

these conditions still exist, however.  Plaintiff has thus failed to assert that he suffers from

conditions that violate the Eighth Amendment.  See, e.g., Hill v. Pugh, 75 F. App'x at 721

(affirming district court's dismissal of the complaint for failure to state a claim for cruel and

unusual punishment).

Plaintiff also alleges that he has been in solitary confinement since 1983.  (Doc. 41 at ¶

31.)  Plaintiff alleges that he suffers from "mental anguish," "mental harm," "depression,

physiological harms, hallucinations, disorientation, memory loss, and other unexpressed harms

and/or symptoms."  Id. at ¶¶ 200, 202-03.  "Depression and anxiety are unfortunate concomitants

of incarceration; they do not, however, typically constitute the 'extreme deprivations ... required

to make out a conditions-of-confinement claim.'"  Five Percenters, 174 F.3d at 472 (quoting

Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)).

Second, with respect to the subjective component, Plaintiff has not alleged that the

Defendants, in their official capacities, knew of and disregarded an excessive risk to Plaintiff's

health or safety.  Perkins, 165 F.3d at 809.  Plaintiff does not allege that Defendants knew of any

possible risk to Plaintiff's physical or mental health and disregarded that risk.  See Kikumura v.

Osagie, 461 F.3d at 1294 (holding that pro se plaintiff who pled that defendant "knew" of and

"disregarded that risk" satisfied basic pleading requirement).

Because Plaintiff has not alleged facts showing that his current conditions of confinement

violate the Eight Amendment, and has not alleged facts to meet either the objective or subjective

components of the Eighth Amendment test, Plaintiff has failed to state a claim based on the

Eighth Amendment.  For these reasons, this Court should dismiss Claim 4.

IV.     **Claim 7 Should Be Dismissed**

In Claim 7, Plaintiff alleges that "Defendants violated Plaintiff's right to private

attorney-client consultation" by videotaping consultation sessions, posting prison guards near the

door, and requiring Plaintiff and his counsel to communicate by "telephone while separated by

soundproof glass barrier." See Doc. 41 at 37, caption for Claim 7 and ¶¶ 263-65.  Plaintiff

appears to be asserting a First Amendment claim.  Because Plaintiff has not alleged an actual

injury resulting from the visitation conditions he alleges, Plaintiff lacks standing to bring Claim

7.

A.     **Burden of Proof and Elements of Standing**

A claim on which a plaintiff lacks standing is appropriately dismissed pursuant to Rule

12(b)(1). See Colo. Envtl. Coal. v. Wenker, 353 F.3d 1221, 1227 (10th Cir. 2004) (treating

appeal as seeking review of Rule 12(b)(1) dismissal because standing is jurisdictional).  Plaintiff

bears the burden of establishing standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

(1993).  To establish standing, a plaintiff "must allege (and ultimately prove) that [he has]

suffered an 'injury in fact' that the injury is fairly traceable to the challenged action of the

Defendants, and that it is redressable by a favorable decision." Initiative and Referendum Inst. v.

Walker, 450 F.3d 1082, 1087 (10th Cir. 2006).  To establish standing based on future injury, a

plaintiff's allegations must be "particular and concrete," Steel Co. v. Citizens for a Better Env't,

523 U.S. 83, 109 (1998), and the injury must be "certainly impending," Whitmore v. Arkansas,

495 U.S. 149, 158 (1990).  See also City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983).

**B.     Elements of First Amendment Claim**

"It is settled that a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Turner v. Safley, 482 U.S. 78, 95 (1987) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, if a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (citing Turner, 482 U.S. at 89). The First Amendment protects the rights of private parties to "retain counsel to ascertain their legal rights," and to "speak freely about their legal problems." See Martin v. Lauer, 686 F.2d 24, 32 (D.C. Cir. 1982). In order to allege a First Amendment violation, Plaintiff must show that Defendants impinged on Plaintiff's right to retain counsel or speak freely about his legal problems.[6]

The First Amendment guarantees the right of access to the courts. See Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2404 (2006) ("The right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.") (internal quotations omitted). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the

---

[6] The court, in evaluating a valid First Amendment claim, must balance the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987): (1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Id. at 89-90. Because Plaintiff cannot demonstrate a First Amendment violation, Defendants do not address this aspect of the test in this motion.

law." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  The inmate cannot simply allege that the

"legal assistance program is subpar in some theoretical sense … [he] must go one step further

and demonstrate that the alleged shortcoming … hindered his efforts to pursue a legal claim."

<u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996); <u>see also</u> <u>Bourdon v. Loughren</u>, 386 F.3d 88, 98 (2d

Cir. 2004) (holding that to demonstrate inadequate assistance from persons trained in the law, an

inmate must show that prison officials restricted access to attorneys or otherwise hindered efforts

to pursue claims in court).  The requirement that an inmate demonstrate an actual injury "derives

ultimately from the doctrine of standing."  <u>Lewis</u>, 518 U.S. at 349.

### C.    Elements Not Supported by Amended Complaint: Actual Injury

Because Plaintiff has alleged no actual injury caused by the alleged restricted access,

Plaintiff lacks standing to bring Claim 7.  Plaintiff does not allege at any point in his Amended

Complaint that any of the alleged shortcomings related to his access to his attorney hindered his

efforts to pursue a legal claim.  <u>See generally</u> Doc. 41.  Plaintiff has not alleged that Defendants

have impinged on Plaintiff's right to retain counsel.  To the contrary, Plaintiff is represented by

counsel, and acknowledges visits from counsel in his Amended Complaint.  <u>See</u> Doc. 41 at ¶¶

184-88.

Plaintiff has also not alleged that Defendants have impinged Plaintiff's ability to speak

freely with his counsel.  While Plaintiff conclusorily alleges that the "conditions of the 'visiting

room' hinder [Plaintiff's] ability to conduct meaningful visits with his attorneys" (Doc. 41 at ¶

188, quotations in original), the specific facts alleged by Plaintiff regarding his attorney visits

demonstrate that Plaintiff is able to communicate freely with his attorneys.  For, example,

Plaintiff is able to speak with his attorneys via a "telephone-style intercom device attached to the wall."[7] Id. at ¶ 184.

Plaintiff has not alleged any injury at all related to his access to the courts. Plaintiff does not even allege the possibility of future injury. Thus, this Court should dismiss Claim 7. Plaintiff's allegations do not establish a plausible claim that his First Amendment right to speak freely with counsel has been impinged on. Therefore, Part 1 of Claim 7 should be dismissed.

**CONCLUSION**

For the above reasons, Defendants' Partial Motion to Dismiss by the Official Capacity Defendants should be granted and Claims 1, 2, 3, 4, and 7 should be dismissed as against the official capacity Defendants.

Respectfully submitted this 28th day of March, 2008.

TROY A. EID
United States Attorney


s/ Marcy E. Cook
Marcy E. Cook
Kevin T. Traskos
Assistant United States Attorneys
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0171 / 0184
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
        kevin.traskos@usdoj.gov
Counsel for Defendants

---

[7] Plaintiff contradicts this statement in Paragraph 185, in which he states that Plaintiff must "shout[]" to communicate with his attorneys. (Doc. 41 at ¶ 185.)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of March, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Dan Manville
dmanville@law.du.edu
Counsel for Plaintiffs

I also hereby certify that on this 28th day of March, 2008, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

None

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0171
Fax: (303) 454-0408
E-mail: marcy.cook@usdoj.gov
Counsel for Defendants