**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-CV-02471-PAB-KMT

THOMAS SILVERSTEIN,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS
et. al.,

    Defendants.

_____

**PLAINTIFF'S MOTION TO COMPEL ENTRIES ON LAND,
TO MAKE PLAINTIFF AVAILABLE FOR MEDICAL EXAMINATION BY
PLAINTIFF'S EXPERT, AND TO AWARD SANCTIONS**
_____

    Plaintiff Thomas Silverstein, by and through his undersigned attorneys, the University of Denver Student Law Office, moves this Court for an order compelling the defendant Federal Bureau of Prisons (the "BOP" or "Defendant") to provide access to Defendant's land pursuant to Fed.R.Civ.P. 34 and 37, in accordance with the following requests for entry on land propounded by Plaintiff on Defendant: Plaintiff's Amended Second Request for Entry on Land to Defendant Federal Bureau of Prisons, dated October 17, 2008 (the "Second Entry Request") (attached as Exhibit A); Plaintiff's Third Request for Entry on Land to Defendant Federal Bureau of Prisons, dated October 22, 2008 (the "Third Entry Request") (attached as Exhibit B); and Plaintiff's Fourth Request for Entry on Land to Defendant Federal Bureau of Prisons, dated November 6, 2008 (the "Fourth Entry Request") (attached as Exhibit C).

    Plaintiff further moves this Court for an order compelling Defendant to make Plaintiff available for a medical examination by Dr. Brie Williams, an expert witness retained by

1

Plaintiff, for the purposes of this litigation (the "Expert Medical Examination"), at a location and in a manner that is acceptable to each of the Plaintiff, his counsel, Dr. Williams, and the Defendant, and on a day and time that is sufficiently in advance of February 2, 2009, the deadline for designation of expert witnesses in this litigation, pursuant to Fed. R. Civ. P. 26(a)(2). See Doc. 109. Finally, Plaintiff moves this Court for an award of its costs and fees in bringing the instant motion, pursuant to Fed. R. Civ. P. 37(a)(5)(A), on the basis that, as argued in full below, Defendant's refusal to cooperate in the above-mentioned discovery is without substantial justification.

## BACKGROUND FACTS

As pled in Plaintiff's First Amended Complaint For Declaratory and Injunctive Relief and Damages, dated March 15, 2008 (Doc. 41) (the "Complaint"), Plaintiff Thomas Silverstein has been confined under "no human contact" status since 1983, in unique, specially-designed cells in three different Bureau of Prisons institutions: the United States Penitentiary-Atlanta;[1] the United States Penitentiary –Leavenworth; and, since 2005, the United States Penitentiary-Administrative Maximum (the "ADX"), in Florence, Colorado. Complaint at ¶¶ 3, 31, 153, 197, and 206. Not only has the Plaintiff been confined under "no human contact" status, but he has also been subjected to indefinite solitary confinement for the past twenty-five years. Complaint at ¶¶ 33-34, 41-42, 81, 87, 90, and 153. Throughout these twenty-five years of indefinite solitary confinement, he has received no meaningful reviews and the length and nature of solitary confinement have resulted in psychological harm to Mr. Silverstein. See Complaint at ¶¶ 125-170 and 200-206.

---

[1] Plaintiff is not compelling entry into USP-Atlanta in reliance on an October 7, 2008 letter from Defendants representing that Plaintiff's areas of confinement in USP-Atlanta no longer exist.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(A), the following reasonable good faith efforts were made prior to filing this motion:

With respect to Plaintiff's Second Entry Request, counsel for Plaintiff sent e-mail messages to Defendants' counsel on October 17 and October 23, 2008 in an effort to schedule the entry on land to USP-Leavenworth. Defendants' counsel responded by denying this request based on Defendants' assertion that relevance had yet to be established. Plaintiff's counsel sent a follow-up letter on October 27, 2008 in which Plaintiff provided an explanation of the relevance of the Second Entry Request to Plaintiff's claims; again, Defendants denied the request in a November 5, 2008 letter. See Exhibit D. A second follow-up letter was sent to Defendants on November 17, 2008 further detailing the need for the entry on land to USP-Leavenworth and explaining that a motion to compel would be filed if the request was denied. See Exhibit E. In a letter dated November 21, 2008 Defendants again denied Plaintiff's Second Entry Request. See Exhibit F.

With respect to Plaintiff's Third Entry Request, counsel for Plaintiff sent e-mail messages on October 22 and 23, 2008 in an effort to schedule the entry on land to J-Unit and K-Unit at the ADX, and the Pre-Transfer Unit at the United States Penitentiary-Florence (collectively, the "ADX Step-Down Units"). Defendants' counsel sent a response letter on October 23, 2008 denying entry into the ADX Step-Down Units. Plaintiff's counsel sent a follow-up e-mail on October 24, 2008, and entry into the ADX Step-Down Units was again denied by Defendants. In an October 27, 2008 letter, Plaintiff's counsel again reiterated the relevance of and need for entry into the ADX Step-Down Units. Defendants denied Plaintiff's request in a November 5, 2008 letter, claiming entry into these units is not material

3

to the claims Plaintiff has asserted.  See Exhibit D.  Plaintiff's counsel wrote a follow-up letter on November 17, 2008 explaining that a motion to compel would be filed if the request was denied.  See Exhibit E.  Defendants sent a letter on November 21, 2008 denying Plaintiff's Third Entry Request.  See Exhibit F.

With respect to Plaintiff's Fourth Entry Request, counsel for Plaintiff sent an e-mail on November 5, 2008 in an attempt to schedule the entry into Plaintiff's particular cell at ADX.  Defendants' counsel denied this request.  See Exhibit D.  Plaintiff's counsel sent a follow-up letter on November 17, 2008, detailing the need for this entry and explaining that a motion to compel would be filed if the request was denied.  See Exhibit E.  Defendants denied Plaintiff's Fourth Entry Request in letters dated November 17, 2008, see Exhibit G, and November 21, 2008.  See Exhibit F.

With respect to the Expert Medical Examination of Plaintiff, counsel for Plaintiff sent an e-mail message to Defendants' counsel on October 29, 2008, informing them that Plaintiff had retained a fourth expert, Dr. Brie Williams, who was described as "a medical expert [who] will need to do a full medical examination of" the Plaintiff, and inquired as to whether this examination could occur in conjunction with the entry requested in the Fourth Entry Request.  See Exhibit H at 4-5.  Defendants' counsel responded on November 4, 2008, by requesting that Dr. Williams and Plaintiff's counsel complete a "sponsorship packet," and separately submit a written request for the Expert Medical Examination, outlining its parameters, length, and the identities of any individuals who would be present for it.  Id. at 3. Counsel for Plaintiff submitted the requested documentation on November 21, 2008.  See Exhibit I (partially redacted).  On December 1 and 4, 2008, Defendants' counsel denied the Expert Medical Examination, stating that a "private physician may be permitted to examine

4

an inmate only when that physician was treating the inmate prior to incarceration." See Exhibits J and K.

## TEXT OF DISCOVERY TO BE COMPELLED

Pursuant to D.C.COLO.LCivR 37.1, the following sets forth verbatim the three requests for entry on land, propounded pursuant to Fed.R.Civ.P. 34, for which Plaintiff seeks an order compelling discovery, pursuant to Fed.R.Civ.P. 37:

1)      *Plaintiff's Amended Second Request for Entry on Land to Defendant Federal Bureau of Prisons*: *Defendants are requested to permit Plaintiff's counsel, Laura Rovner, Holly Truhlar, and Nicole Godfrey, along with Plaintiff's experts, Dr. Spencer Friedman, Dr. Craig Haney and Mr. Steve Martin, to enter [USP-Leavenworth], on a date and time to be decided by counsel for the parties, to inspect, measure, and photograph any and all areas of confinement in which Mr. Silverstein has been held since December 1, 1987.  Defendants are also requested to permit Plaintiff's counsel and Plaintiff's experts to enter a general population cell, a general population unit recreation area, and a general population dining area, to inspect, measure, and photograph each of these areas.*

*Plaintiff requests that a BOP agent with knowledge of the various functions and operations of all features, devices, appliances and other equipment within the areas of confinement be present.  This knowledge should include how each is routinely used.*

2)      *Plaintiff's Third Request for Entry on Land to Defendant Federal Bureau of Prisons*: *Defendants are requested to permit Plaintiff's counsel, Laura Rovner, Holly Truhlar, and Nicole Godfrey, along with Plaintiff's experts, Dr. Craig Haney, Dr. Spencer Friedman, and Mr. Steve J. Martin, enter J-Unit and K-Unit at ADX and the*

5

*ADX Pre-Transfer Unit at USP-Florence, to inspect, measure, and photograph each of these units and the unit recreation areas.*

*Plaintiff requests that a BOP agent with knowledge of the various functions of all devices, appliances, and other equipment within these areas be present. This knowledge should include how each is routinely used.*

*3)     <u>Plaintiff's Fourth Request for Entry on Land to Defendant Federal Bureau of Prisons</u>: Defendant is requested to permit Plaintiff's counsel, Laura Rovner, Raja Raghunath, Holly Truhlar, and Nicole Godfrey, along with Plaintiff's expert, Dr. Brie Williams, to enter ADX, on a date and time to be decided by counsel for the parties, to inspect, measure, and photograph any and all areas of confinement in which Mr. Silverstein is currently being held.*

*Plaintiff requests that a BOP agent with knowledge of the various functions of all devices, appliances, and other equipment within these areas be present. This knowledge should include how each is routinely used.*

Defendant denied Plaintiff's Second and Third Entry Requests based on an alleged lack of relevance. <u>See</u> Exhibits D and F. Defendants denied Plaintiff's Fourth Entry Request based on an alleged institutional disruption that would be caused by such entry. <u>See</u> Exhibit G.[2] Defendants denied the Expert Medical Examination on the sole basis that BOP policy precludes the medical examination of inmates when such an exam is to be conducted by a physician who was not treating the inmate prior to incarceration. <u>See</u> Exhibit J.

---

[2] This is the only instance in which the Defendant has asserted that agreeing to the requested discovery would impose an undue burden upon it; accordingly, this is the only instance for which Plaintiff argues herein that the burden is outweighed by the relevance of the discovery sought. Plaintiff urges this Court to consider the equities of Defendant's failure to otherwise state in any way to Plaintiff during the conferral process the burden imposed by the discovery sought by Plaintiff, when this Court weighs any arguments made by the Defendant about that burden in response to the instant motion.

6

**STANDARD OF LAW**

Rule 26(b)(1), which governs the scope and limits of discovery, allows parties to obtain discovery regarding any matter "that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed for purposes of discovery. A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." Exhibit L, Pivotal Colorado II, LLC v. Triple Beteiligungs-GMBH & Co. KG, 2008 WL 349059, at *3 (D. Colo. February 6 2008); see also Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995). As described below, the requested entries on land and the Expert Medical Examination are relevant, not unduly burdensome on Defendant, and should be granted.

"The party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery: (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Simpson v. Univ. of Colo., 220 F.R.D. 354, 359 (D. Colo. 2004). Defendant fails to meet this burden, and indeed offers no substantial justification for its refusal to cooperate with this discovery, meriting an award of sanctions against it.

**ARGUMENT**

**A.    Entry on Land to USP-Leavenworth is Relevant to Plaintiff's Eighth Amendment and Due Process Claims**

Plaintiff's Second Entry Request seeks entry into USP-Leavenworth, where Plaintiff was confined in specially-designed and isolated cells for 17 years, prior to his transfer to ADX in 2005. This request includes all areas in which Plaintiff was confined, as well as a general population cell, recreation area, and dining area. See Exhibit A.

7

In order to prove Claim 1 of Plaintiff's Complaint, which asserts that Plaintiff has been deprived of a liberty interest without due process of law, Plaintiff must show that his conditions amounted to an atypical and significant hardship as compared to ordinary incidents of prison life. Wilkinson v. Austin, 545 U.S. 209, 223 (2005). As pled in the Complaint, this claim encompasses the entirety of the past 25 years during which Plaintiff has been confined under "no human contact" status by Defendants, including the 17-year period Plaintiff was confined in USP-Leavenworth from 1987 to 2005. Complaint at ¶¶ 224-230. The particular conditions in which he was confined there, as compared to the conditions of confinement of other prisoners at USP-Leavenworth, are relevant to Plaintiff's due process claim, as well as the duration of time he was held in these conditions. See Wilkinson, 545 U.S. at 223-24.

In Wilkinson, the Supreme Court examined the conditions imposed upon inmates at the Ohio State Penitentiary (the "OSP") and ruled that the extreme nature of these conditions were atypical and significant as compared to incidents of ordinary prison life. The Supreme Court relied upon specific aspects of confinement at the OSP, such as the size of the cells, the inmates' exposure to light, access to recreation, types of doors, soundproofing, glass walls between visitors and inmates, overall sensory deprivation, and limited human contact. Id. at 214. Accordingly, the Tenth Circuit held that in determining whether an inmate has a liberty interest in not being subjected to indefinite solitary confinement, one factor to be reviewed is whether the conditions of placement are extreme. Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons, 473 F.3d 1334, 1342 (10th Cir. 2007). In order to demonstrate that Plaintiff's conditions of confinement at USP-Leavenworth were extreme, Plaintiff's counsel and experts must inspect and measure all of Plaintiff's areas of confinement. To

8

further compare and illustrate the extreme nature of Plaintiff's confinement, general population areas must also be inspected.

The Second Entry Request for USP-Leavenworth is also relevant to Claim 4 of Plaintiff's Complaint, which asserts that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Complaint at ¶¶ 245-251. In his Complaint, Plaintiff asserts facts that show that his conditions of confinement have not changed in any meaningful way for the past 25 years. Complaint at ¶¶ 3, 31, 90, 153, 170, 197, and 206. More specifically, Plaintiff's Complaint claims that beginning in USP-Atlanta in 1983, and at each subsequent institution in which Plaintiff has been confined, Plaintiff's "no human contact" status has been maintained. Complaint at ¶¶ 3, 31, 153, 197, and 206. Like Claim 1, Claim 4 encompasses all 25 years of Plaintiff's confinement under "no human contact" status, including the 17 years he was incarcerated at USP-Leavenworth in cells specifically designed to isolate Plaintiff.

In order to show an Eighth Amendment violation, Plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." Benefield v. McDowall, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Plaintiff's Eighth Amendment claim is based, in part, on the *duration* of Plaintiff's conditions of confinement over the past 25 years. See Hutto v. Finney, 437 U.S. 678, 686 (1978) ("It is equally plain, however, that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards"). Granting access to the areas of confinement where Plaintiff was held in USP-Leavenworth will help Plaintiff show that his conditions of confinement have not been substantially altered over the past 25 years. Additionally, Plaintiff's experts need to examine Mr. Silverstein's areas of

9

confinement at USP-Leavenworth in order to opine on whether the conditions there presented a substantial risk of serious harm to him.

Defendants have asserted that Plaintiff's conditions of confinement at USP-Leavenworth are not relevant to his claims on the theory that "Plaintiff's injunctive relief claims are necessarily limited to his current conditions of confinement, and Plaintiff's <u>Bivens</u> claims are confined by the two-year statute of limitations." <u>See</u> Exhibit D.  Defendants' assertion refers only to the remedies potentially available, and ignores the evidentiary burden that Plaintiff bears for the substantive liability portions of his claims.  Moreover, this Court has not ruled that Plaintiff's <u>Bivens</u> claims are confined by a two-year statute of limitations.[3]

In lieu of granting the Second Entry Request, Defendants have offered to provide Plaintiff with photographs and diagrams of Plaintiff's cell on S Range at USP-Leavenworth. <u>See</u> Exhibit F.  Plaintiff's attorneys and experts need to inspect the cells themselves because some aspects of Plaintiffs confinement cannot be measured and assessed via photographs and diagrams.  These include an assessment of sunlight, artificial light, heat conditions, soundproofing, access to recreation, access to and conditions of visiting booths, isolation from other inmates, and actual human contact available through various doors and slots.

In addition, Plaintiff's Complaint asserts that he was confined in two areas at USP-Leavenworth, including a specially designed cell in administrative detention, and another unique cell in the basement of USP-Leavenworth.  Complaint at ¶¶ 91, 92, and 95. Defendants have disregarded Plaintiff's area of confinement in the basement of USP-Leavenworth in their offer of photographs and diagrams.  Plaintiff was confined in this

---

[3] Plaintiff maintains that these are continuing violations, and the statute of limitations is appropriately calculated from the date of the most recent of Defendants' continuing violations of Plaintiff's constitutional rights.  <u>See, e.g.,</u> Exhibit M, <u>Georgacarakos v. Wiley</u>, 2008 WL 4216265, at *13 (D. Colo. Sept. 12, 2008) (claims challenging the constitutional sufficiency of current conditions of confinement are appropriately subject to the continuing violation theory).

basement cell for 18 months, a fact that has been documented in the non-fiction book "The Hot House: Life Inside Leavenworth Prison" by Pete Earley (Bantam, 1993), as well as other media sources.  All areas of confinement where Plaintiff was held at USP-Leavenworth, including this basement cell, are relevant to Plaintiff's claims and entry into these areas should be granted.

**B.     Entry on Land to the ADX Step-Down Units is Relevant to Plaintiff's Due Process Claims**

Plaintiff's Third Entry Request seeks entry into the ADX Step-Down Units, which include J Unit, K Unit, and the Pre-Transfer Unit.[4]  See Exhibit B.  Conditions in these units are relevant to Plaintiff's due process claims, particularly Claim 3, which asserts that Defendants have violated his Fifth Amendment due process rights by denying him entry into the "Step-Down" program at ADX.  Complaint at ¶¶ 238-244. Part of the step down program includes entry into the Pre-Transfer Unit, J Unit, and K Unit, as defined in ADX Institution Supplement FLM 5321.06H(1).

Plaintiff and his experts need to examine the ADX Step-Down Units to adequately rebut Defendants' anticipated defense that Mr. Silverstein cannot be moved into the ADX Step-Down Units based on Plaintiff's security needs and the adequacy of the units, as presently configured, to accommodate those needs.  In particular, Plaintiff's correctional expert needs to examine the ADX Step-Down Units to be able to sufficiently opine on the validity of any such defenses asserted by Defendants.

In lieu of granting Plaintiff's Third Entry Request, Plaintiff offered that Defendants stipulate that no defense relating to the particular suitability of Plaintiff to the ADX Step-Down Units as presently configured be asserted, at any stage of the proceedings, in response

---

[4] The Pre-Transfer Unit is actually located at the United States Penitentiary-Florence, but is part of the "Step-Down" program at ADX, as defined in ADX Institution Supplement FLM 5321.06H(1).

11

to Plaintiff's due process claim. Defendants declined to so stipulate. See Exhibit D. Because discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party, entry into the ADX Step-Down Units is relevant and should be granted.

**C.   Entry on Land to Plaintiff's Particular Cell at the ADX is Relevant to Plaintiff's Eighth Amendment and Due Process Claims**

Plaintiff's Fourth Entry Request seeks entry, for Plaintiff's counsel and expert, Dr. Brie Williams, into all areas of confinement in which Mr. Silverstein is currently being held. See Exhibit C. While Defendants provided an entry on land into ADX on October 26, 2008, neither Plaintiff's counsel nor his experts were allowed entry into Plaintiff's current cell,[5] despite Plaintiff's express request in his First Amended Request for Entry on Land to Defendant Federal Bureau of Prisons, dated October 15, 2008 (the "First Entry Request") to see this particular cell. See Exhibit N at 2 (defining "areas of confinement" to include, inter alia, "those areas where Mr. Silverstein currently sleeps, eats, bathes, exercises and receives medical and mental health attention.").

Additionally, after further consultation with counsel and expert witnesses following the entry permitted by Defendant pursuant to the First Entry Request, Plaintiff determined that there was a need for an additional expert witness. This new expert, Dr. Brie Williams, is a medical and geriatric expert who will be assessing Plaintiff's current state of health, as well as his physical and environmental conditions. As such, this expert will need to see Plaintiff's particular conditions of confinement.

---

[5] Plaintiff's counsel was not informed that they would not be permitted entry into Plaintiff's actual cell until after they had arrived at ADX, on October 26, 2008, the day of the first requested entry on land. At this time, three of Plaintiff's experts, two of whom had been flown in from out of state, were present and anticipating entry into Plaintiff's actual cell. Entry into Plaintiff's particular cell was never granted.

Defendants contend that the pictures and measurements of a different but similar D Unit cell should be sufficient. However, entry into Plaintiff's *actual* cell and range is necessary.[6] In particular, Plaintiff's medical expert will be conducting a geriatric examination that includes an assessment of Plaintiff's particular environment. Aspects of Plaintiff's conditions that are necessary for this expert's full and thorough evaluation of Plaintiff's environment include the maneuvering of handles, assessment of sunlight, level of noise disturbance, specific safety concerns, stiffness of the bed, space for Plaintiff's particular personal items, and how easily corrections staff can be heard when approaching or talking to Plaintiff. These are all matters that are material to Plaintiff's expert's testimony and cannot be assessed through pictures and measurements. Because the conditions of Plaintiff's current areas of confinement are essential to several of Plaintiff's claims, as described above, this request is relevant and should be granted.

Finally, with respect to Defendant's concerns about an "institutional disruption" that may potentially be caused by agreeing to the Fourth Entry Request, Defendant's conclusory statement that such a disruption could occur was not accompanied by any further information as to how this could happen. Most crucially, Defendant was entirely unresponsive to Plaintiff's efforts to minimize such potential disruption through conferral over the date, time, and scope of such entry. Defendant simply seems irritated at the prospect of allowing a second entry into the ADX, and appears to believe that the existence of such irritation is "disruption" enough to warrant refusing further discovery along the lines of the Fourth Entry

---

[6] Plaintiff alleges in the Complaint that he has been confined in cells specially designed to isolate and continuously monitor him in all current and preceding areas of confinement since 1983. Complaint at ¶¶ 46-47, 52, 90-92, 95, 99, 135, 175, and 178-179. Plaintiff has identified factual support in the documents produced by Defendants to date for his belief that this policy has not been changed in his specific current conditions of confinement.

13

Request.  Accordingly, there is no evidence of a burden for this Court to balance against the relevance and importance of the discovery sought in this instance.

### D.  **The Expert Medical Examination is Essential for Plaintiff's Expert Witness to Provide Testimony in Her Area of Expertise, and Said Testimony is Relevant to Plaintiff's Eighth Amendment and Due Process Claims**

As noted above, Plaintiff's Expert Medical Examination seeks to allow Plaintiff's expert, Dr. Williams, to medically assess Plaintiff's current physical health.  Plaintiff has pled that his placement for twenty-five years in "no human contact" solitary confinement has resulted in severe harms to his well-being.  The extent of these harms, and of Plaintiff's present physical limitations, bear directly on the affirmative evidentiary showing he is required to make with respect to his claims under the Fifth and Eighth Amendments to the United States Constitution, as well as his burden to rebut any contemplated defenses raised by Defendants regarding the level of security risk that Plaintiff presents in the event he is removed from "no human contact" status.  See Section A, above.

Furthermore, the medical examination of a party by a medical doctor, retained as an expert witness by that party to diagnose and opine upon his medical condition, in furtherance of that party's claims where that medical condition is material to such claims, is paradigmatically the type of discovery that should be permitted under the Rules of Civil Procedure.  Indeed, Dr. Williams has herself previously so examined inmates who brought similar Eighth Amendment claims "aris[ing] from their approximately 28 to 35 year confinements in the Closed Cell Restriction Unit ('CCR' or 'lockdown') at the Louisiana State Penitentiary," and testified as an expert witness on the basis of those exams.  See Exhibit O, Wilkerson v. Stalder, 2007 WL 2693852, at *1, *4-5 (M.D.La. Sept. 11, 2007).

Finally, the rules explicitly allow for an *opposing* party to compel such a medical

examination, upon a showing of good cause, in instances where "a party whose mental or physical condition...is in controversy." Fed. R. Civ. P. 35. It is difficult to contemplate the Defendants foregoing this opportunity, if it served their litigation interests, due to the existence of a BOP policy disallowing the treatment of inmates by physicians who did not treat them prior to incarceration. Accordingly, Defendant is in no way substantially justified in refusing to allow the Expert Medical Examination, and should be compelled to do so.

## CONCLUSION

For the reasons articulated above, Plaintiff Thomas Silverstein respectfully requests that this Court grant Plaintiff's Motion to Compel Entries on Land, to Make Plaintiff Available for Medical Examination by Plaintiff's Expert, and to Award Sanctions. Plaintiff requests sanctions of attorneys' fees and costs incurred in preparing this motion, pursuant to Fed.R.Civ.P. 37(a)(5)(A), on the basis that the Defendant's actions which led Plaintiff to file the instant motion to compel were not substantially justified.

DATED: December 4, 2008

                                                Respectfully Submitted,

                                                STUDENT LAW OFFICE

                                                <u>s/ Nicole Godfrey</u>
                                                Nicole Godfrey, Student Attorney

                                                <u>s/ Raja Raghunath</u>
                                                Raja Raghunath, Esq.
                                                University of Denver Sturm College of Law
                                                2255 E. Evans Ave. Ste. 335
                                                Denver, Colorado 80208
                                                Telephone: (303) 871-6140
                                                Fax: (303) 871-6847
                                                E-mail: rraghunath@law.du.edu
                                                Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2008, I electronically filed the foregoing PLAINTIFF'S MOTION TO COMPEL ENTRIES ON LAND, TO MAKE PLAINTIFF AVAILABLE FOR MEDICAL EXAMINATION BY PLAINTIFF'S EXPERT, AND TO AWARD SANCTIONS, and attached exhibits, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

**Marcy Elizabeth Cook**
Marcy.Cook@usdoj.gov

                                                         s/ Raja Raghunath
                                                        Raja Raghunath