IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-02471-PAB-KMT

THOMAS SILVERSTEIN,

 Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, sued in its official capacity,
JOHN VANYUR, former Assistant director, correctional Programs Division, Federal Bureau of prisons; in his individual capacity,
JOYCE CONLEY, Assistant Director, Correctional Programs Division, Federal Bureau of Prisons,
MICHAEL NALLEY, Regional Director, Federal Bureau of Prisons, in his official capacity,
DONALD DENNEY, Regional Psychology Administrator, North Central Region, Federal Bureau of Prisons, in his individual and official capacities,
RONNIE WILEY, Warden, United States Penitentiary Administrative Maximum, in his individual and official capacities,
MARIE BAILEY, Staff Psychologist, United States Penitentiary Administrative Maximum, in her individual and official capacities, and
PAUL ZOHN, Staff Psychologist, United States Penitentiary Administrative Maximum, in his individual and official capacities,

 Defendants.

## ORDER

 This matter is before the court on "Plaintiff's Motion to Compel Entries on Land, to Make Plaintiff Available for Medical Examination by Plaintiff's Expert, and to Award Sanctions" (hereinafter "Mot."). [Doc. No. 114, filed December 4, 2008.] "Defendants' Response Opposing Plaintiff's Motion to Compel and for Sanctions (Doc. 114)" (hereinafter

"Rsp." [Doc. No. 120]) was filed on December 24, 2008 and Plaintiff's Reply was filed on January 8, 2009. [Doc. No. 121.]  This court has determined that oral argument would not be beneficial and therefore the matter is ripe for review and ruling.

Plaintiff seeks permission for Dr. Brie Williams, one of plaintiff's several experts, together with three members of the legal team representing plaintiff, visit the United States Penitentiary-Administrative Maximum ("ADX") to "inspect, measure and photograph" plaintiff's current area of confinement.  Plaintiff also seeks permission for Dr. Williams to perform an independent medical examination ("IME").

In addition to viewing plaintiff's specific cell, plaintiff also seeks permission for attorneys to enter "J-Unit and K-Unit at ADX . . . Pre-Transfer Unit at USP-Florence" with three different experts (Drs. Friedman, Haney and Martin) for the same purpose.

Additionally, Plaintiff also seeks permission for the three legal team members together with the three experts (Drs. Freidman, Haney and Martin), to enter the United States Penitentiary-Leavenworth to inspect, measure, and photograph "any and all areas of confinement in which Mr. Silverstein has been held since December 1, 1987."  Plaintiff seeks access for the same six people to enter a general population cell, recreation area and dining area to inspect, measure and photograph each area.

Defendants object to the five requests.  Defendants assert (and it is not disputed) that plaintiff's legal counsel and Drs. Friedman, Haney and Martin were admitted into ADX in October 2008 and were allowed to inspect a cell identical to the several in which Mr. Silverstein is housed in each of the units where plaintiff has been held.  Defendants have agreed to provide

photographs and scale diagrams of all the areas visited.  Defendants have also agreed to provide photographs and diagrams of the location in USP-Leavenworth where Plaintiff was incarcerated from 1998 to 2005.  Additionally, Defendants claim to have permitted Plaintiff's mental health experts to perform multiple medical examinations on Plaintiff.  (Rsp. at 4.)  Defendants object to further entries into the prisons on the ground that entries into the prisons cause significant disruption to the prison facilities, and further on the grounds that the discovery is not relevant, the discovery is unreasonably cumulative, the discovery can be obtained by a less intrusive method than another site inspection and that the burden associated with complying with the discovery requests outweighs any likely benefit.  (*Id*. at 5.)

### *LEGAL STANDARDS*

Rule 26(b)(1), which governs the scope and limits of discovery, allows parties to obtain discovery regarding any matter "that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).  This court generally construes relevancy broadly for purposes of discovery.  However, a court should limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(I), (iii).

Pursuant to Fed. R. Civ. P. 34(a)(2), a party may serve a request "to permit entry onto designated land."   In evaluating a request for entry on land, the Court should consider "the degree to which the proposed inspection will aid in the search for truth," and then balance that "against the burdens and dangers created by the inspection." *Belcher v. Bassett Furniture Indus.,*

*Inc.*, 588 F.2d 904, 908 (4th Cir. 1978); *see also N.Y. State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956, 961 (2d Cir. 1983); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.D.C. 1999).

"The right of a party under Rule 34 to inspect and test, like all discovery, is not unlimited."  *Micro Chemical, Inc., v. Lextron, Inc*., 193 F.R.D. 667, 668-69 (D. Colo.2000).

> Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted . . . . Rule 26(c) expressly provides that "for good cause shown," the court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by either denying inspection or by appropriate restrictions on the inspection. Under this subsection, the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.

*Id.* (quoting *Belcher* at 908).  See also *Jackson v. BNSF Railway Co*., 2007 WL 1630691, *1 (D. Colo. 2007).

### *ANALYSIS*

#### *A.     Entry Onto Land – ADX*

As noted, three experts and several attorneys for plaintiff have already conducted a site inspection at ADX and were allowed to inspect a cell identical to those housing the plaintiff.[1] The entry and inspection occurred three days prior to the plaintiff's first request to allow Dr. Williams an additional entry and inspection. (Mot., Exh. C.)  Dr. Williams is claimed to be a "medical and geriatric expert who will be assessing Plaintiff's current state of health, as well as his physical and environmental conditions."  The court is perplexed why this medical doctor

---

[1] For security reasons, ADX prisoners are not kept in any one cell for extended periods of time, but are moved at varying intervals. (Rsp. at 16.)

would need to see the plaintiff's physical cell – as opposed to photographs and scale diagrams – any more than any other medical doctor would need to make house calls to his or her patients in order to evaluate physical and mental health. In any event, Dr. Williams could have been included in the site visit which was conducted on October 26, 2008. Therefore, allowing another site visit for Dr. Williams is duplicative of discovery already allowed and the relevant information can be obtained through photographs and diagrams. The burden imposed by allowing a site visit at this maximum security facility outweighs any likely benefit of the visit.

Plaintiff also complains that inspecting a "representative" cell is not adequate for the needs of plaintiff because "[d]efendants have given no indication whether the 'representative empty general population unit cell' into which entry was permitted was in fact one of [the cells where plaintiff had actually been held] nor whether the cells in which Plaintiff has been housed have in any way been modified from the parameters of the 'representative' cell." (Reply at 6.) The defendants, however, state that the entry on land previously permitted was "[o]n Range 13, the entry on land included entry into the cells in which Plaintiff was incarcerated . . .[i]n D Unit, the entry on land included entry into a representative general population cell . . . ." (Rsp. at 15.) Any question that remains about alterations or modifications to the "representative cell" can easily and efficiently be handled by written interrogatories and/or requests for admission and do not require that plaintiff's lawyers and experts visit ADX again.

The plaintiff also requests that the three expert witnesses who actually were part of the site visit in October, 2008 be allowed to return to ADX to examine the two "step-down" units. The Second Amended Complaint [Doc. No. 158, filed May 14, 2009] alleges a due process

5

violation as a result of plaintiff's not being provided an appropriate level of process with respect to whether he should be allowed into the step-down program. *Id*. at ¶¶ 172-185, 241-245. What the step-down unit <u>looks like</u> is completely irrelevant to the question of whether the plaintiff has been afforded due process in the determination of whether he should be allowed to participate in the program. Whether or not the prison officials justify denial of the step-down program to plaintiff on the basis of physical security concerns is simply not the point; the issue in this case is whether – no matter what the prison officials present as reason – the plaintiff was afforded an adequate process to be heard on the issue. Since any information or observations which could be obtained by a site visit at the step-down unit at ADX is irrelevant and is not calculated to lead to any relevant information concerning the plaintiff's claims, this request will not be granted.

### B.  *Entry Onto Land – Leavenworth*

Plaintiff seeks to have a mass site visit for his experts and attorneys at USP Leavenworth, a prison facility he left in 2005. Defendants assert that the security classification level at Leavenworth has changed from high security to medium security. (Rsp., Exh. A-1 at 5.) Therefore, they argue, any visit to any of the general population areas of the prison would be irrelevant since it would not be representative of the environment while plaintiff was housed at the institution. *Id.*

Defendants have agreed to provide to plaintiff's counsel photographs and diagrams of S Range, where Plaintiff was incarcerated from 1998 to 2005. Although it is true that a photograph is not the same as a live image, it is extremely unlikely that either the court or jurors will be allowed an on-site visit to USP Leavenworth and the plaintiff will need to proceed at trial

with admissible evidence in the form of photographs, diagrams or other visual aides.  Given that the prison itself is no longer in the same condition and performing the same function as when plaintiff was housed there, I find that the scant extra information which could be extracted by a personal viewing of a specific cell by the experts is far outweighed by the burden and expense on the parties and on the prison by allowing a mass site visit.

### C.   *Independent Medical Examination by Dr. Williams*

It is beyond cavil that a plaintiff may retain its own expert medical witness to examine himself and render opinion testimony at trial.  No court intervention is necessary to accomplish this task in a case where the person to be examined is not incarcerated.  Voluntary examinations of a party to a lawsuit by its own expert are not covered by Fed. R. Civ. P. 35 which addresses compelled examinations by experts usually employed by an opposing party.[2]   However, unique to this case, plaintiff — who has committed multiple known murders including inmates and prison staff – cannot simply go to Dr. Williams' office for the requested examination.  Instead, if an examination is to take place, the plaintiff must safely be made available by prison staff for such an examination.  If Dr. Williams is allowed into the facility to conduct such a medical examination, the prison staff must insure not only the security needs attendant to the plaintiff, but must also insure the safety of Dr. Williams.

---

[2] Pursuant to Fed. R. Civ. P. 35(a)(1), the Court "may order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).

The defendants have been able to successfully accomplish examinations by two of plaintiff's experts previously.  (Rsp. at 18.)  Defendants' primary objection to the examination by Dr. Williams is that the defendants do not believe that the examination is "necessary."  (*Id.* at 19.)  This, however, misses the point.  While a finding of good cause supporting an involuntary examination is required, *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 689 (10th Cir. 2007) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19, (1964)), the same is not true for a voluntary retained expert examination.  What is requested is not a compelled examination; rather, it is that the prison make the prisoner available for a voluntary examination.

The court sees no reason why the prison cannot or should not accommodate the plaintiff in accomplishing this voluntary medical examination.  Dr. Williams, of course, will be required to abide by all rules and restrictions reasonably imposed by the prison concerning equipment and other security issues for her own, as well as others', safety and security.

Wherefore it is **ORDERED**

"Plaintiff's Motion to Compel Entries on Land, to Make Plaintiff Available for Medical Examination by Plaintiff's Expert, and to Award Sanctions" [Doc. No. 114] is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with respect to allowing Dr. Brie Williams access to the plaintiff to conduct an independent medical examination.  The independent medical examination will be conducted before July 15, 2009.

The motion is **DENIED** in all other respects.

It is further **ORDERED**

Defendants will provide to plaintiff, on or before June 15, 2009, all photographs, diagrams or other information to which they agreed in their response.

Dated this 20th day of May, 2009.

                                          **BY THE COURT:**

                                          Kathleen M. Tafoya
                                          United States Magistrate Judge