IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-02471-PAB-KMT

THOMAS SILVERSTEIN,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, sued in its official capacity,
JOHN VANYUR, former Assistant Director, Correctional Programs Division, Federal Bureau of
Prisons; in his individual capacity,
JOYCE CONLEY, Assistant Director, Correctional Programs Division, Federal Bureau of
Prisons,
MICHAEL NALLEY, Regional Director, Federal Bureau of Prisons, in his official capacity,
DONALD DENNEY, Regional Psychology Administrator, North Central Region, Federal
Bureau of Prisons, in his individual and official capacities,
RONNIE WILEY, Warden, United States Penitentiary Administrative Maximum,
in his individual and official capacities,
MARIE BAILEY, Staff Psychologist, United States Penitentiary Administrative Maximum, in
her individual and official capacities, and
PAUL ZOHN, Staff Psychologist, United States Penitentiary Administrative Maximum, in his
individual and official capacities,

      Defendants.

---

## ORDER

---

      This matter is before the court on a discovery dispute regarding disclosure of a three-page

document bearing the date October 2004 and sequentially labeled during the discovery process

as US 16468 - US 16470 (hereinafter referenced as the "October 2004 Document").  On

November 12, 2009, this court was contacted telephonically and asked to schedule an emergency

hearing regarding the cancellation of the deposition of U.S. Bureau of Prisons' ("BOP") Associate General Counsel for Legislative and Correctional Issues Branch, Paul Layer, which had been scheduled to take place the following day, November 13, 2009.

On November 13, 2009, the court heard argument centered on whether the October 2004 Document was covered by the attorney-client privilege and/or the work product privilege, whether such privileges had been waived by production and, whether such a waiver would extend to the subject matter contained in the document. [See, Doc. No. 224, Transcript of Hearing on November 13, 2009.] The court asked the parties for further briefing on the latter point and submission of relevant authority by November 23, 2009. The deposition of Paul Layer was stayed pending the court's consideration of the issues.

On November 23, 2009, the plaintiff filed a "Motion for Determination of Waiver" (hereinafter "Mot.Waiver") [Doc. No. 236] addressing the applicability of privileges and waiver with respect to the October 2004 Document. Additionally, the plaintiff filed a "Motion to Compel Deposition Testimony and Documents Related to the 10/04 Document" (hereinafter "Mot.Compel") [Doc. No. 237] addressing subject matter waiver of privilege concerning the October 2004 Document. On the same day, Defendants filed a "Response to Order to Brief Issues of Potential Waiver of Relevant Privileges" (hereinafter "Resp.") addressing the same issues contained in both Plaintiff's motions. [Doc. No. 235.] The motion were referred to this court by Judge Brimmer on November 24, 2009. [Doc. No. 239.]

Having heard oral argument and reviewed all pleadings and their multiple exhibits and attachments, the court finds that further oral argument would not be helpful and the issues are ripe for review.

### *Background*

There is no disagreement about the essential facts leading up to the disclosure of the October 2004 Document.  In the Fall of 2008, Defendants produced a privilege log to the plaintiff.  (Resp. at 1, Ex. A-1, Attachment 1.)  The first entry in that log refers to an "OCG Memorandum re: Whether to Continue Annual Reviews of Inmate Thomas Silverstein (October 2004)."  (*Id.*)  This document is undisputedly the October 2004 Document at the heart of this controversy.  The privilege log indicates the October 2004 Document was created by the "Office of General Counsel" and that the recipient was "Director, BOP."  (*Id.*)  The privilege claimed was "Attorney Client."  (*Id.*)

Defendants state the October 2004 Document was provided to Christopher B. Synsvoll, Supervisory Attorney at the BOP's Federal Correctional Complex in Florence, Colorado, North Central Regional Office ("NCRO"), after he had requested documents responsive to Plaintiff's discovery requests.  (Resp., Ex. A-6, Declaration of Christopher B. Synsvoll at ¶ 3.)  Mr. Synsvoll initially flagged the October 2004 Document for further inquiry because the document was neither signed nor did it indicate the intended recipient.[1]  (*Id.* at ¶ 4.).  Mr. Synsvoll began additional inquiries with the NCRO specifically addressing the October 2004 Document and

---

[1] It remains unclear exactly how the attorneys knew the information contained on the privilege log.

3

requested background information concerning the document.  (*Id.*)  Mr. Synsvoll was advised

that staff who might be able to provide further information about the October 2004 Document

were either retired or no longer worked at the NCRO.  (*Id.* at ¶ 5.)

Given this limited information, Mr. Synsvoll provided the October 2004 Document to

Assistant United States Attorney ("AUSA") Marcy Cook, and notified her of the issuesyet to be

fully addressed.  (*Id.* at ¶ 6; Resp., Ex. A-1, Deposition of Marcy Cook, at ¶ 7.)  The two

attorneys concurred in placing the document on a privilege log and withholding production until

additional information could be obtained.  (*Id.*)

On December 22, 2008, AUSA Cook provided Plaintiff's counsel certain documents

responsive to a request made during a deposition.  (Resp., Exh A-1 at ¶ 8.)  As part of her

response, AUSA Cook enclosed a document she identified as the "2004 Information Paper,"

Bates Nos. US 16364 - US 16366 (hereinafter "Executive Staff Information Paper").  (*Id.* at ¶ 9.)

The Executive Staff Information Paper is a three-page memorandum dated October 15, 2004

from Michael K. Nalley, the Regional Director of the BOP's North Central Region, to the BOP's

Executive Staff.  (Resp., Ex. A-3 at 1.)  Meanwhile, Mr. Synsvoll had determined that the

October 2004 Document, previously withheld as privileged, was "an Executive Staff Information

Paper, prepared in October 2004 by staff in the Correctional Programs division of the NCRO, for

presentation by the Regional Director at the Fall 2004 Executive Staff meeting."  (Resp. at 6.)

Mr. Synsvoll so advised AUSA Cook who thereafter concluded she had misidentified the

document she had previously identified as the Executive Staff Information Paper and that the

October 2004 Document (still withheld as privileged) should have been identified as the

Executive Staff Information Paper.  (Resp., Ex. A-1 at ¶ 12.)  Acting on these assumptions, on January 16, 2009, AUSA Cook advised Plaintiff's counsel that the document she had previously identified as the Executive Staff Information Paper (Bates Nos. US 16364-US 16366) was not that document and that the Executive Staff Information Paper was actually located at Bates Nos. US 16468 - US 16470, the location of the previously withheld October 2004 Document at issue herein.  (*Id.* at ¶ 14; Mot.Waiver, Ex. B.)  This deduction was later proven incorrect.

On or about January 20, 2009, four days later, Mr. Synsvoll and AUSA Cook learned that the October 2004 Document was not the Executive Staff Information Paper.  (*Id.* at ¶ 17; Resp., Ex. A-6 at ¶ 8.)  Mr. Synsvoll also learned that the October 2004 Document had been attached to the actual Executive Staff Information Paper although he remained uncertain about why the two documents were attached and about who had created the October 2004 Document, or why.  (*Id.*)  In late-January 2009, consistent with the information she had received from Mr. Synsvoll, AUSA Cook informed Plaintiff's counsel verbally, during a deposition, that the document she had identified as the Executive Staff Information Paper in her January correspondence was not, in fact, that document.  (*Id.* at ¶ 20.)  She also indicated that her initial correspondence on December 22, 2008, that the Executive Staff Information Paper (Bates Nos. US 16364 - US 16366) was correct.  (*Id.* at ¶¶ 9-10.)  It is undisputed that AUSA Cook did not ask Plaintiff's counsel to return the October 2004 Document and she did not re-assert any privileges with regard to the October 2004 Document, in spite of having initially identified the document as generated by the BOP General Counsel's Office and received by the Director of the BOP.  (*Id.* at ¶ 21.)

On February 11, 2009, Plaintiff served a Rule 30(b)(6) notice of deposition.  Topics 11 and 12 requested testimony from a designated witness about:

> 11. The creation, drafting, promulgation, issuance, and use of the 10/04 document that begins "Request of Director" ... including prior and subsequent drafts and versions of that document.

> 12. The distribution and implementation of the 10/04 document[2].

(*Id.* at ¶ 22; Mot.Waiver, Ex. B at 1.)  On March 23, 2009, after consulting with Mr. Synsvoll, AUSA Cook designated Paul Layer as the BOP representative who would testify on topics 11 and 12.[3]  (Resp., Ex. A-1 at ¶ 24; Mot.Waiver at Ex. F.)  As noted, Paul Layer is an Associate General Counsel – essentially in-house counsel for the BOP.  In her correspondence to Plaintiff, AUSA Cook did not assert any privileges with regard to the October 2004 Document.  (Resp., Ex. A-1 at ¶ 25.)

Approximately two months later, discovery was stayed from May 9, 2009, until July 20, 2009.  [Doc. No. 175.]  On May 27, 2009, while the stay was active, Plaintiff served an Amended Notice of Rule 30(b)(6) Deposition wherein topics 7 and 8 referenced the same general subject matter of the former topics 11 and 12.  (Resp., Ex. A-1 at ¶ 27; Mot.Waiver at 3, Ex. H.)  Again, AUSA Cook designated Paul Layer as the deponent but this time indicated, "To

---

[2] Plaintiff and Defendants reference the October 2004 Document differently.  Where referenced in Plaintiff's materials, the designation "10/04 document" refers to the same documents as the "October 2004 Document."

[3] Defendants have claimed that "the BOP employee whom we designate [as a Rule 30(b)(6) topic deponent] must obtain approval from his or her supervisor to testify.  It is then necessary for the employee to take the time to gather and digest the information available to the organization."  (Mot.Waiver, Ex. G at 1.)

the extent any prior drafts or versions of the10/04 Document exist, they may be protected by the attorney-client, work-product, or deliberative process privileges. (Mot.Waiver, Ex. I.) Moreover, Defendants reserve the right to assert the attorney-client, work-product, and deliberative process privileges, where appropriate, . . ." (*Id.*) Mr. Layer's deposition was scheduled for November 13, 2009. (Mot.Waiver at 4, Ex. J.)

Over the course of eleven months, Mr. Synsvoll repeatedly requested that Paul Layer clear up the issues surrounding the drafting of the October 2004 Document. (Resp., Ex. A-6 at ¶9.) On March 16, 2009, Mr. Synsvoll spoke with Mr. Layer regarding the October 2004 Document speculating as to its authorship and Mr. Layer agreed to review the matter to determine if an appropriate privilege needed to be asserted. (*Id.*) A month later, Mr. Synsvoll and AUSA Cook spoke with Mr. Layer and discussed possible dates for his deposition. (*Id.*) Mr. Layer reiterated his previous statements, noting that he had not completed his review. (*Id.*) On May 4, 2009, Mr. Synsvoll again spoke with Mr. Layer, informing him that the parties agreed to stay discovery in this matter between May 9, 2009, and July 20, 2009. Again, Mr. Layer claimed he had not completed his review but would do so as soon as practical. (*Id.*) After the discovery stay was lifted, Mr. Synsvoll again spoke with Mr. Layer on August 5, 2009, informing him about the amended Rule 30(b)(6) notice of deposition. (*Id.* at 10) Mr. Layer again agreed to a designation to speak on behalf of the BOP, conditioning his agreement on the outcome of his review of the matter which he still had not completed. Mr. Layer promised he would complete the review "in the very near future to prepare for his deposition." (*Id.*) On September 1, 2009, Mr. Synsvoll spoke with Mr. Layer again to discuss available deposition

dates, and Mr. Layer once again stated he had not completed his review but would do so "prior to his meeting to prepare for the deposition." (*Id.*)  Finally, Mr. Synsvoll spoke with Mr. Layer on October 8, 2009 to discuss his availability for the deposition on November 13, 2009.  Mr. Layer indicated that he was available and that he would be prepared to discuss the October 2004 Document with counsel on November 12, 2009, to prepare for the deposition.  (*Id.*)

On September 25, 2009, AUSA Susan Prose entered her appearance in this case.  [Doc. No. 213.]  On November 11, 2009, AUSA Prose first reviewed the October 2004 Document and learned from Mr. Layer on November 12, 2009 the following:

> The October 2004 Document discussed a request by the "Director" to determine whether there was a continued need for an annual review of inmate Silverstein; who was best suited to conduct the review; whether it should continue to come before the Executive Staff; and whether there are other inmates in similar housing conditions who should be reviewed as well. [Mot. ] Ex. A-2; see also [Mot.] Ex. A-4, Declaration of Susan Prose at ¶ 12. The "Director," however, is not identified. Ex. A-2. AUSA Prosed (sic) learned that Kathleen Kenny, the Bureau's General Counsel, had requested that Paul Layer, Associate General Counsel for Legislative and Correctional Issues Branch at Bureau's Central Office in Washington, D.C., provide her with information regarding these issues. Ex. A-4 at ¶ 12. Mr. Layer delegated the task to Dominique Raia, Senior Counsel for Legislative and Correctional Issues Branch, who authored the October 2004 Document. *Id.* at ¶ 13. Ms. Raia, however, did not sign the October 2004 Document, and did not address it to anyone. Ex. A-2. Harley G. Lappin, the Bureau's Director, made the request referenced in the October 2004 Document. [Mot.] Ex. A-5, Declaration of Harley G. Lappin at ¶¶ 1, 5b. Director Lappin is the highest Bureau employee with general knowledge about the October 2004 Document, and has personally reviewed it. *Id.* at ¶ 4.

Resp. at 3.  AUSA Prose thereafter claimed attorney client privilege for the October 2004 Document, requested return of the document, and these motions and briefs ensued.  The court vacated Mr. Layer's deposition pending ruling on these issues.

8

*ANALYSIS*

**A.    *Privileges Applicable***

   *1.    Attorney-Client*

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *In re Qwest, Communications Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The attorney-client privilege protects from discovery communications made in confidence between the client and the attorney. *EEOC v. Outback Steakhouse of Florida*, 251 F.R.D. 603, 610 (D. Colo. 2008). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co*., 449 U.S. at 389.

"[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995). In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client. *United States v. Johnston* , 146 F.3d 785, 794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983).

The party seeking to invoke the attorney-client privilege bears the burden of establishing its applicability. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir.1999). *See also United States v. Phelan*, 3 Fed. Appx. 716, 718 (10th Cir. 2001). In this case, the burden is on the BOP, as the

9

government agency seeking the invocation of the attorney client privilege, to demonstrate that the document at issue is protected by the privilege. *Bethel v. United States*, No. 05-cv-01336-PSF-KLM, 2008 WL 45382, at *7 (D. Colo. Jan. 2, 2008).

The defendants contend that the October 2004 Document is protected pursuant to the attorney-client privilege, that the document should be returned to the BOP, and that no questioning about the document be allowed in deposition. Defendants contend the October 2004 Document is a "confidential communication between the Bureau's General Counsel – the attorney – and the Bureau's Director and Executive Staff – the clients." (Resp. at 13.) It is undisputed that the October 2004 Document was created at the request of BOP Director Lappin, who asked the General Counsel to provide him with guidance and legal advice and opinions on certain issues. (Resp., Ex. A-5 at ¶ 5.) Those issues were whether there was a continued need for an annual review of inmate Silverstein's continued incarceration in solitary confinement, who was best suited to conduct the review, whether Silverstein's solitary confinement condition should continue to come before the Executive Staff and, if so, how often, and whether there were other inmates in similar housing conditions who should be reviewed as well. (Resp., Ex. A-2.)

Based on the content of the October 2004 Document the court finds that the document, at its inception, was a communication between a lawyer, Dominique Raia, and her client, Director Lappin, which related to legal advice or strategy and which was rendered at the request of the client, Director Lappin. *See Johnston*, 146 F.3d at 794. It was, therefore, entitled to the protection of the attorney-client privilege.

2.      *Work Product Doctrine*

The work product doctrine was originally recognized in *Hickman v. Taylor*,  329 U.S.

495, 499-500 (1947).  *In re Qwest Communications*, 450 F.3d at 1185.  The work-product

doctrine subsequently was incorporated into Fed. R. Civ. P. 26(b)(3), which provides:

> [A] party may obtain discovery of documents and tangible things otherwise
> discoverable under subdivision (b)(1) of this rule and prepared in anticipation of
> litigation or for trial by or for another . . . party's representative . . . only upon a
> showing that the party seeking discovery has substantial need of the materials in
> the preparation of the party's case and that the party is unable without undue
> hardship to obtain the substantial equivalent of the materials by other means. In
> ordering discovery of such materials when the required showing has been made,
> the court shall protect against disclosure of the mental impressions, conclusions,
> opinions, or legal theories of an attorney or other representative of a party
> concerning the litigation.

*Id.*  The doctrine therefore, is interpreted under both the Rule and *Hickman*.  The work-product

privilege's purpose is to "shelter[ ] the mental processes of the attorney, providing a privileged

area within which he can analyze and prepare his client's case."  *United States v. Nobles*, 422

U.S. 225, 238 (1975); *see also Upjohn*, 449 U.S. at 400.  It "is an intensely practical [doctrine],

grounded in the realities of the litigation in our adversary system."  *In re Qwest

Communications*, 450 F.3d at 1186.

The work-product doctrine is applicable even if the documents at issue were not prepared

in the course of ongoing litigation against the specific party seeking production of that

document. *S.E.C. v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2007 WL 219966, at *8 (D. Colo.,

January 25, 2007).  *See also Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (D. Del. 1977)

(recognizing  "the fact that litigation may still be a contingency at the time the document is

prepared has not been held to render the [work product] privilege inapplicable, if the prospect of litigation is identifiable because of claims that have already arisen"). Rule 26(b)(3), however, requires more than a cursory or conclusory proffer that the requested documents were prepared in anticipation of litigation. *Nacchio*, at *8; *See, e.g., Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002) (rejecting an invocation of the work product doctrine that relied solely on an affidavit that contained only conclusory statements); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995) ("a mere allegation that the work product doctrine applies is insufficient."); *In re Application of Michael Wilson & Partners,* No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *6 (D. Colo. Apr. 30, 2009). *Compare, In re Sealed Case*, 146 F.3d. 881, 888 (D.C. Cir. 1998) (holding that the work product doctrine protects documents prepared in anticipation of litigation, regardless of whether the anticipated litigation ever occurs); *United States v. Adlman,* 134 F.3d 1194, 1198-99 (2d Cir. 1998) (interpreting the reference in Rule 26(b)(3) to documents "prepared in anticipation of litigation" to subsume a different and broader category of materials than would be encompassed by the phrase 'or for trial').

As grounds for assertion of the work product protection for the October 2004 Document, and in support of their claim that the October 2004 Document was prepared in anticipation of litigation, Defendants state, "[t]he General Counsel used the October 2004 Document to make recommendations to the Bureau's executive staff regarding Plaintiff and other inmates, including some who may have had pending litigation." (Resp. at 13.) The document itself references litigation known as the *Fountain* case and the author makes certain recommendations regarding

compliance with past court orders.  (Resp., Ex. A-2.)  The defendants point to no pending

litigation for which the attorney was analyzing a case and it is not clear whether any particular

inmate's case was pending at the time.

All things considered, however, given that the preparer of the October 2004 Document

was an attorney in the BOP General Counsel's Office advising the Director with respect to the

legal ramifications, including potential lawsuits, if certain reviews or staffings were

discontinued, I find that the work product privilege did apply to the October 2004 Document at

its inception.

### 3.    *Deliberative Process*

The deliberative process privilege, also known as the governmental, executive or official

information privilege, protects "[a]dvisory opinions, recommendations and deliberations that

reflect how government decisions are made."  *Stewart v. Dept. of Interior*, 554 F.3d 1236, 1239

(10th Cir. 2009) (quoting *Dept. of the Interior v. Klamath Water Users Protective Ass'n.*, 532

U.S. 1, 8 (2001)).  The deliberative process privilege has been codified at 5 U.S.C. § 552(b)(5).

One of the purposes of the protection for deliberative process is to protect documents which

contain discussions regarding proposed polices to avoid confusing the public by releasing

"reasons and rationale that were not in fact ultimately grounds for an agency's actions."  *S.E.C.*

*v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2009 WL 211511, at *6 (D. Colo. Jan. 29, 2009).  The

purpose of the privilege is to prevent injury to the quality of agency decisions by allowing

government officials freedom to debate alternative approaches in private."  *In re Sealed Case*,

121 F.3d 729, 737 (D.C. Cir. 1997).

The information for which a party seeks protection of the deliberative process privilege must be "predecisional and deliberative." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1227 (10th Cir. 2007); *Olmsted v. McNutt*, 188 F.R.D. 386, 388 (D. Colo. 1999).  A predecisional memoranda is one that is "prepared in order to assist an agency decisionmaker in arriving at his decision . . . ." *Id.*  The deliberative process privilege does not shield documents that "simply state or explain a decision . . . or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Sealed Case*, 121 F.3d at 737; *Fourhorn v. City and County of Denver*, No. 08-cv-01693-MSK-KLM, 2009 WL 2407569, at *1 -2 (D. Colo. Aug. 3, 2009).  Further, the deliberative process privilege does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *EPA v. Mink*, 410 U.S. 73, 87-88 (1973).  Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected.  *See, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (deliberative process cases "focus on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.")

BOP attorney Raia states in the October 2004 Document that she had reviewed relevant case law and advised the Director that courts had, at that point, considered four main areas when assessing the constitutionality of continuation of solitary confinement in particular cases.  After setting forth the four areas of court interest, Raia states, "We need to carefully consider each of

14

these four areas to determine whether both the review process itself and the (conditions of )

continued solitary confinement would pass constitutional muster." (Resp., Exh A-2 at 2.) The

October 2004 Document goes on to recite what processes were being applied to the confinement

decisions with respect to Mr. Silverstein and Mr. Fountain and to compare the two with process

received by inmates under Special Administrative Measures. Clearly, the October 2004

Document is predecisional and operating as an advisement on whether to change the *status quo*

with respect to Plaintiff's and others' conditions of confinement.

Under the circumstances of this case, I find that the October 2004 Document does qualify

as a predecisional and deliberative document and it, therefore, qualifies for the deliberative

process privilege protection.

### B.     *Waiver of Privileges*

#### 1.     *Attorney-Client and Work Product Privileges*

There is no question that the October 2004 document was disclosed to opposing counsel,

discussed between and among counsel, and a conscious decision made not to recall the document

in spite of its previous characterization as privileged. Mr. Synsvoll continued, as noted, to gather

more information about the document indicating that the document was not simply forgotten

after its initial disclosure. Further, the October 2004 Document was also disclosed to all of the

defendants' testifying experts in this case. (See Mot.Waiver, Ex. O at 11:24-12:7, Transcript of

deposition of Les Smith; *Id.*, Ex. P, at 10:5-9, Transcript of Richard Derr; *Id.*, Ex. Q, at 23, Index

of Materials Reviewed by Dr. Harold Bursztajn.) Plaintiff also sent the document to his experts,

Drs. Haney and Friedman, as well as correctional expert Steve Martin. (*Id*. at 5.)

The attorney-client privilege is usually narrowly construed because it inhibits the truth finding process. *Sedillos v. Bd. of Educ.*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004). Because the thrust of the privilege is to protect confidentiality, "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir. 1990); *In re Qwest Communications*, 450 F.3d at 1185 ("voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."); *United States v. Berand*, 877 F.2d 1463, 1465 (10th Cir. 1989). The confidentiality of communications covered by the privilege "must be jealously guarded by the holder of the privilege" lest it be waived. *In re Qwest Communications,* at 1185. "The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Ryans* at 741 n.13.

The protection provided by the work-product doctrine likewise is not absolute, and it may be waived. *See Nobles*, 422 U.S. at 239. The Tenth Circuit recognizes that production of work-product material during discovery waives a work-product objection. *Grace United Methodist Church v. Cheyenne*, 427 F.3d 775, 801-02 (10th Cir. 2005); *see also Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1272 (10th Cir. 1999) (indicating that the work-product doctrine is affected when a disclosure is to an adversary).

Such broad disclosure of this document by the defendants and the plaintiff, coupled with the failure by the defendants to immediately recall the document on January 20, 2009, when AUSA Cook discovered that the document was not the Executive Staff Information Paper, does not reflect a "jealous guarding" by the defendants of the privileges contained in this document.

16

Clearly the attorney-client and work product privileges, including undisclosed subject matter, would have been waived by the substantial disclosures if not for the advent of Fed. R. Evid. 502.

Fed. R. Evid. 502 was enacted on September 19, 2008, to address the rising costs of litigation necessary to protect against waiver of attorney-client and work product privileges by inadvertent disclosure in this world of vast information availability.  A significant motivation for the new rule was the increased prominence of electronic discovery that may involve the production of thousands of pieces of electronically stored information that had led "fortunes to be spent analyzing every piece lest the inadvertent production of one be deemed a waiver not only as to the piece inadvertently disclosed but as to all the others that relate to the same subject matter."  See Fed. R. Evid. 502 Advisory Committee Note; *Amobi v. District of Columbia Dept. of Corrections*, — F. Supp. 2d ----, No. 08-1501, 2009 WL 4609593, at *6 (D.C. Cir., Dec. 8, 2009).  To date, most of the Rule 502 cases deal with electronic discovery.  *See, e.g., Heriot v. Byrne,* 257 F.R.D. 645, 660-61 (N.D. Ill.2009); *Rhoads Indus., Inc. v. Bldg. Materials Corp. of America*, 254 F.R.D. 216 (E.D. Pa. 2008).

Rule 502 clearly abrogates previous Tenth Circuit law concerning subject matter waivers on disclosed documents otherwise protected by attorney-client privilege and work-product protection.  *See, e.g., In Re Qwest Communications*, 450 F.3d at 1195 (recognizing three limited exceptions to waiver and refusing to recognize a common law selective waiver doctrine); *Ryans*, 903 F.2d at 741 n.13 (stating that a voluntary, inadvertent disclosure constitutes a waiver of the entire subject matter).

The new Federal Rule of Evidence 502(b) protects from subject matter waiver a privileged document that has been disclosed inadvertently.  *See* Fed. R. Evid. 502(b).  The Rule addresses, 1) Limitations of Scope of Waivers, 2) Protections Against Inadvertent Disclosure, 3) the Effect on State Proceedings and Disclosures Made in State Court, 4) Orders Protecting Privileged Communications Binding on Non-Parties, and 5) Agreements Protecting Privileged Communications Binding on Parties.  Fed. R. Evid. 502, Adv. Comm. Note., Expl. Note (Revised 11/28/2007).  Rule 502 applies to all proceedings commenced after September 19, 2008, and, insofar as it is just and practicable, to all proceedings pending on September 19, 2008. Fed. R. Evid. 502 Hist. Note.

In relevant part, Rule 502 provides as follows:

(a) Disclosure made in a Federal proceeding or to a Federal office or agency; scope of a waiver.-- When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
(1) the waiver is intentional;
(2) the disclosed and undisclosed communications or information concern the same subject matter; and
(3) they ought in fairness to be considered together.
(b) Inadvertent disclosure.-When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
(1) the disclosure is inadvertent;
(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
(3) the holder promptly took reasonable steps to rectify the error, including      (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(a) and (b).

18

Rule 502(b) deals with whether a disclosure of privileged information constitutes an inadvertent waiver of the attorney-client privilege and work-product protection, while Rule 502(a) governs the scope of the waiver if such waiver was not ruled inadvertent.  Rule 502(b) limits a waiver to only the disclosed document and not to information about or derived from the document if three factors are met.  If the holder of the privilege cannot demonstrate that all three of the factors exist, the analysis will proceed forward to 502(a).  While an inadvertent disclosure no longer carries with it the high cost of subject-matter waiver, Rule 502(b) does not remove the parties' responsibility to take reasonable precautions against disclosure of privileged documents and to take reasonable and immediate actions when a disclosure of an otherwise privileged document is discovered.  *See Amobi* at *7.  The burden of showing that the privilege has not been waived remains with the party claiming the privilege.  *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) *In re Qwest Communications*, 450 F.3d at 1185.

First, Rule 502(b) requires that this court determine if the disclosure of the October 2004 Document was inadvertent.  The dictionary definition of the word inadvertent is, "not attentive or observant; heedless; due to oversight; unintentional."  WEBSTER'S NEW WORLD DICTIONARY (3d College ed. 1988).  Courts have considered a number of factors to determine inadvertency, including the number of documents produced in discovery, the level of care with which the review for privilege was conducted, and the actions of the producing party after discovering that the document had been produced.  *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) and *Heriot*, 257 F.R.D. at 658-59.

The October 2004 Document was originally examined by two lawyers representing the BOP, "agency" lawyer Chris Synsvoll and AUSA Marcy Cook.  Both lawyers determined that someone in the office of General Counsel had created the document and presented it to the Director of the BOP and so noted the document as privileged on a log produced to the plaintiff. Several months later Mr. Synsvoll received inaccurate information about the document  causing him to mistakenly identify the October 2004 Document as the Executive Staff Information Paper, a non-privileged document.  AUSA Cook, proceeding under that mistake, produced the October 2004 Document to the plaintiff.

This court is not convinced that this type of mistake was Congress' concern when creating Rule 502.  Based on all the commentary, the word "inadvertent" from Rule 502 mandates a remedy for an unintended, rather than mistaken, disclosure.  The October 2004 Document was specifically examined and willfully withheld from production by two attorneys representing the BOP.  This is not a case where the questioned document was part of a larger production which went unnoticed by the producer to the opposition party.  The October 2004 Document was specifically addressed by the holder of the privilege.  Therefore, I cannot conclude that the disclosure was "inadvertent" as defined by Rule 502(b)(1) with respect to the January 16, 2009 original disclosure.

An examination of the second part of the Rule 502(b) inquiry – whether the holder of the privilege or protection took reasonable steps to prevent disclosure of the privileged document – supports the same conclusion.  Fed. R. Evid. 502(b)(2).  This second step in the analysis has been considered by several courts in reference to electronic discovery.  *See, e.g., Victor Stanley,*

*Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 259 (D. Md. 2008).  The Committee Note indicates

that a conscious choice was made not to codify any factors in the rule itself because the analysis

should be flexible and should be applied on a case-by-case basis.   Fed. R. Evid. 502 Adv.

Comm. N., sub. (b).  The Advisory Committee Note sets forth some non-dispositive factors a

court may consider when assessing the reasonableness of precautions taken including the time

taken to rectify the error, the scope of discovery, the extent of the disclosure, the number of

documents to be reviewed, the time constraints for production, and the overriding issue of

fairness   *Id.*

  Initially, the defendants took steps to protect the October 2004 Document by putting it on

a privilege log and withholding production based upon the creator and the recipient of the

document as noted on the log.  Later, the document was produced based upon mistaken identity

of the document which indicated it had been previously distributed to third parties.  However,

there is no dispute that both Mr. Synsvoll and AUSA Cook had the document in hand and could

easily read for themselves the content of the document.  Additionally, on January 20, 2009, a

mere four days after AUSA Cook mistakenly released the October 2004 Document from the

restraints of attorney-client and work product privilege, Mr. Synsvoll and AUSA Cook learned

that they had misidentified the October 2004 Document and that it was actually as it had been

described in the privilege log initially.  In spite of that discovery, neither attorney acting on

behalf of the BOP ever requested the document back, or asserted a privilege with respect to the document again.[4]

It is therefore, irrefutable that while the defendants took reasonable steps to prevent disclosure of the document in the first instance, Defendants utterly failed to continue to reasonably protect the document and failed again to take reasonable steps to rectify the erroneous disclosure which had taken place only four days previously.  Therefore, I find the defendants are unable to avail themselves of the protection in Rule 502(b) as they fail all three tests contained in the rule.

Having found that the waiver cannot be considered "inadvertent" under Rule 502(b), the court must determine whether the disclosure was intentional.  Fed. R. Evid. 502(a).  If the waiver is intentional, meaning that the disclosed privileged material is used to gain advantage in the litigation, the court  must then determine the scope of the waiver – that is, whether it extends to undisclosed communications covering the same subject matter. *Id.*

The standard for extending waiver beyond the materials disclosed is taken from Federal Rule of Evidence 106.  There is a clear distinction between intentional disclosure and intentional waiver, for instance.  "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important

---

[4] Privileges were raised, as noted *infra,* with respect to possible deposition testimony being protected by the attorney-client and work product privileges but not as to the October 2004 Document.

context for proper understanding of the privileged materials . . . ."  *See* 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2016.2 (3rd ed. 2009 Supp.)  As the Explanatory Note to Rule 502(a) states, the Rule creates a general presumption that a waiver is limited only to the materials actually disclosed and limits a subject matter waiver to "unusual" situations:

> The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.  [citations omitted]  Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.  It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver. See Rule 502(b).

Fed. R. Evid. 502 explanatory n.  By requiring a fairness analysis, Congress recognized that "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."  *Eden Isle Marina, Inc. v. United States*, — Fed. Cl. ----, No. 07-127C, 2009 WL 2783031, at *16 (Fed. Cl. Aug. 28, 2009) (citing *Fort James Corp. v. Solo Cup. Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005)).

In addition, Federal Rule of Civil Procedure 26(b)(3)(B) continues to provide special protection for opinion work product.  *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation .");  *see also In re Echostar Communications Corp.*, 448 F.3d 1294, 1303 (Fed. Cir.

2006) ("Under Rule 26(b)(3), this so-called 'opinion' work product deserves the highest protection from disclosure."). Thus, when considering the fairness of granting a subject-matter waiver of work-product protection pursuant to Federal Rule of Evidence 502(a), the court must pay close attention to the special protection afforded opinion work product.

In this case the failure to cure the disclosure of the October 2004 Document lends support to an inference of intentional waiver. The content of the October 2004 Document gives the impression that a complete and thorough assessment of Plaintiff's incarceration conditions and the review process was completed. The document itself, without critical challenge and investigation, also gives the impression that the reviews with respect to Plaintiff were adequate.[5] Mr. Synsvoll's affidavit describes multiple occasions where he requested the Rule 30(b)(6) designated deponent, Paul Layer, to research the details of origin and use of the October 2004 Document. Mr. Layer each time reassured counsel that he would perform a due diligence inquiry, but instead, inexplicably, he continued to procrastinate. Mr. Layer, interestingly, is the one person who had direct, first-hand knowledge about the document and who could have put the issue of privilege to rest early in the litigation. It was Mr. Layer who was asked to prepare the October 2004 Document originally and it was he who delegated the task to the Senior Attorney Raia, the preparer of the paper. Of all the people in the chain of events surrounding the

---

[5] If the document were to be admitted into evidence without further inquiry, statements such as the semi-annual reviews are "meaningful" and that the Annual Reviews are based on a "reasoned assessment" would go unchallenged. (Mot.Waiver, Ex. C.) The overall tone of the document is highly beneficial to the defendants, and now by seeking to block further inquiry based on claims of privilege, Defendants seek to rob Plaintiff of his opportunity to rebut the favorable impression of the document.

discovery disclosure, Mr. Layer could have cleared the confusion about the document with a five minute review.  Instead, over the course of almost eleven months, Mr. Layer did not bother to do so.  This willful dereliction of his duty as the deponent charged with providing information about the October 2004 Document simply cannot be ignored by this court.  The clear inference is that the January 16, 2009 disclosure of the document and the decision to not recall the document on January 20, 2009, leaving it in limbo until the end of discovery, was intentional by the BOP.

The sudden revelation of various privileges associated with the document and its subject matter one day prior to the scheduled Rule 30(b)(6) deposition and then only to an Assistant United States Attorney who had not previously been associated with the case, also supports this court's conclusion that the BOP intentionally and willfully intended to mislead the plaintiff and gain an advantage in the litigation, six days before the close of discovery.

By the defendants' behavior, the plaintiff has clearly been prejudiced since it appears the defendants, on several occasions, instructed different Rule 30(b)(6) deponents not to answer questions concerning the October 2004 Document because the subject matter was relegated by Defendants to Paul Layer's upcoming testimony.  (Mot.Compel at 8-9; Mot.Waiver, Ex. W at 73:18-20 (attorney objecting "you have an entire 30(b)(6) topic specifically asking about this" in relation to questions about the Annual Reviews as documented in the October 2004 Document and related questions about 'special security procedures); Mot.Waiver, Ex. I.)

Fairness dictates that Plaintiff be allowed to proceed with discovery through the witness Paul Layer as anticipated before the untimely privilege objection raised by Plaintiff. Additionally, due to the intentional nature of the disclosure and the suspect one day blind-side to

the plaintiff before the deposition of Mr. Layer, I find that to the extent questions and documents "concern the same subject matter" as that disclosed in the October 2004 Document, "they ought in fairness to be considered together." Fed. R. Evid. 502(a)(3).

### 2.   *Deliberative Process*

The deliberative process privilege is a qualified privilege, meaning that it is not absolute, and even though it may apply to a document, the privilege "may be overcome by showing a need by the plaintiff as an overriding public interest." *Olmsted*, 188 F.R.D. at 388. The need determination is made on a case-by-case basis, "taking into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of litigation,' 'the role of government,' and the 'possibility of future timidity by government employees.'" *Sealed Case*, 121 F .3d at 737-38; *Fourhorn*, at *2.

The October 2004 Document has been in circulation to Plaintiff and experts from both sides of the litigation for almost one year. There is no public interest in protecting the information in the document further, nor is there a need to protect the process which was used in October 2004 to determine the levels and timing of reviews which should be followed to assess the need for Plaintiff to continue in segregated confinement. Since this court has found the disclosure of the document to be intentional, the plaintiff's need for the information trumps any policy interest in the protection of this information six years after it was undertaken.

Therefore, this court finds the deliberative process privilege has been overcome.

### *Conclusion*

This court concludes that taking all the facts of the case into consideration, both the attorney-client privilege and the work product privilege were intentionally waived as to the October 2004 Document.  Additionally, the document is not protected by the deliberative process privilege as the plaintiff's need has overcome the basis underlying the need for the policy.  Further, as a result of the defendants' intentional waiver of the privilege with respect to the October 2004 Document and in basic fairness, Plaintiff will be entitled to discovery from the defendants by way of document production and the deposition of Paul Layer as to the subject matter concerning the October 2004 Document.

By the same token, however, Plaintiff is not entitled to a discovery free-for-all.  Opinion work product, even if developed simultaneously or in concert with the October 2004 Document and concerning the same subject matter, will remain protected from disclosure.   Fed. R. Civ. P. 26(b)(3).  Further, the deposition of Paul Layer was scheduled by agreement of the parties to occur only six days before the discovery cut-off date.  To the extent his testimony would have provided fodder for the plaintiff to seek more discovery, absent the current dispute Plaintiff's time for doing so had run out.  The plaintiff had not noticed any further depositions and the time to have taken supplemental depositions, regardless of what Mr. Layer's testimony would have been sans privilege objections prohibited by this Order, had expired.  The court will only place the plaintiff in the same position he would have been had the malapropos objection not been raised.

Therefore it is **ORDERED**

Plaintiff's "Motion for Determination of Waiver" [Doc. No. 236] and Plaintiff's "Motion

to Compel Deposition Testimony and Documents Related to the 10/04 Document" [Doc. No.

237] are **GRANTED** consistent with this Order and as follows:

1.      Defendants will provide testimony and documents responsive to Plaintiff's Notice of Fed. R. Civ. P. 30(b)(6) Deposition and Requests for Production of Documents within thirty days of this Order.

2.      The Discovery Cut-off date will be continued <u>to the earlier of</u> six days subsequent to the deposition of Paul Layer, or January 20, 2010.

Dated this 14th day of December, 2009.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge