## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02471-PAB-KMT

THOMAS SILVERSTEIN,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
JOHN VANYUR,
JOYCE CONLEY,
MICHAEL NALLEY,
DONALD DENNEY,
RONNIE WILEY,
MARIE BAILEY, and
PAUL ZOHN,

      Defendants.

---

## ANSWER

---

Defendants the Federal Bureau of Prisons ("BOP"), and John Vanyur, Joyce Conley,

Michael Nalley, and Ron Wiley, in their individual capacities,[1] through undersigned counsel,

hereby respond to Plaintiff's Second Amended Complaint ("Complaint") as follows:

### INTRODUCTION

Defendants admit that at the time of the filing of the Complaint, Plaintiff was incarcerated

at the United States Penitentiary, Administrative Maximum ("ADX"), located in Florence,

Colorado.  Defendants state that the remaining allegations in the "Introduction" section of the

---

[1] Defendants Vanyur, Conley, Nalley, Denney, Wiley, Bailey, and Zohn, in their official capacities, have been dismissed from this action.  See Doc. 261 at 38-39.  Defendants Denney, Bailey, and Zohn, in their individual capacities, have been dismissed from this action.  See id.

Complaint are Plaintiff's characterization of Plaintiff's Complaint, to which no response is required. To the extent a response is requires, Defendants deny the remaining allegations in the "Introduction" section of the Complaint.

## JURISDICTION AND VENUE

1.      Defendants state that the allegations in Paragraph 1 are Plaintiff's characterization of Plaintiff's Complaint and a legal conclusion of jurisdiction to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 1.

2.      Defendants state that the allegations in Paragraph 2 are Plaintiff's characterization of Plaintiff's Complaint and a legal conclusion of jurisdiction to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 2.

3.      Defendants state that the allegations in Paragraph 3 are Plaintiff's characterization of Plaintiff's Complaint and a legal conclusion of venue to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 3.

## PARTIES

4.      Defendants admit that Plaintiff is an inmate in the custody of the BOP. Defendants further admit that Plaintiff has been in the custody of the BOP since 1978. Defendants further admit that Plaintiff has been housed at the United States Penitentiary, Administrative Maximum ("ADX") since July 2005. Defendants deny all remaining allegations in Paragraph 4.

5.      Defendants admit that the BOP is an agency of the United States that has charge of the management and regulation of all federal penal and correctional institutions.  Defendants state that the allegation that the "BOP is sued in its official capacity" is Plaintiff's characterization of Plaintiff's Complaint, to which no response is required.  To the extent a response is required, Defendants admit that the BOP is sued in its official capacity. Defendants deny any remaining allegations in Paragraph 5.

6.      Defendants admit that John Vanyur was the Assistant Director for the Correctional Programs Division of the BOP from June 2004 until May 2007.  Defendants admit that the Assistant Director for Correctional Programs is responsible for oversight and management of BOP policy and procedure in several areas, including Correctional Services, Correctional Programs, Inmate Skills Development, Psychology Services, Religious Services, Inmate Systems Management, Special Needs Offenders, and D.C. Offenders.  Defendants further admit that while he was the Assistant Director for the Correctional Programs Division of the BOP, Mr. Vanyur was a member of the Executive Panel that reviewed Plaintiff's confinement at the ADX every six months.  Defendants further admit that while he was the Assistant Director for the Correctional Programs Division of the BOP, Mr. Vanyur was a member of the Executive Panel that conducted reviews of Control Unit inmates every three months.  Defendants state that the allegation that "Defendant Vanyur is sued in his individual capacity" is  Plaintiff's characterization of Plaintiff's Complaint, to which no response is required.  To the extent a response is required, Defendants admit that Mr. Vanyur is sued in his individual capacity. Defendants deny all remaining allegations in Paragraph 6.

7.    Defendants admit that Joyce Conley was the Assistant Director for the Correctional

Programs Division of the BOP from May 2007 until July 2009.  Defendants admit that

the Assistant Director for Correctional Programs is responsible for oversight and

management of BOP policy and procedure in several areas, including Correctional

Services, Correctional Programs, Inmate Skills Development, Psychology Services,

Religious Services, Inmate Systems Management, Special Needs Offenders, and D.C.

Offenders.  Defendants further admit that while she was the Assistant Director for the

Correctional Programs Division of the BOP, Dr. Conley was a member of the Executive

Panel that reviewed Plaintiff's confinement at the ADX every six months until April

2008.  Defendants further admit that while she was the Assistant Director for the

Correctional Programs Division of the BOP, Dr. Conley was a member of the Executive

Panel that conducted reviews of Control Unit inmates every three months.  Defendants

state that the allegation that "Defendant Conley is sued in her official and individual

capacities" is Plaintiff's characterization of Plaintiff's Complaint, to which no response is

required.  To the extent a response is required, Defendants admit that Dr. Conley is sued

in her individual capacity and state that all claims against Dr. Conley in her official

capacity have been dismissed, see Doc. 261.  Defendants deny all remaining allegations

in Paragraph 7.

8.    Defendants admit that Michael Nalley is the Regional Director for the North Central

Region of the BOP.  Defendants admit that Mr. Nalley has held the position of Regional

Director since 2004.  Defendants admit that the Regional Director for the North Central

Region oversees the operation of nineteen BOP facilities and a network of community

corrections assets located throughout twelve mid-western states.  Defendants further

admit that Mr. Nalley was a member of the Executive Panel that reviewed Plaintiff's

confinement at the ADX every six months until April 2008.  Defendants further admit

that Mr. Nalley is a member of the Executive Panel that conducts reviews of Control Unit

inmates every three months.  Defendants state that the allegation that "Defendant Nalley

is sued in his official and individual capacities" is Plaintiff's characterization of

Plaintiff's Complaint, to which no response is required.  To the extent a response is

required, Defendants admit that Mr. Nalley is sued in his individual capacity and state

that all claims against Mr. Nalley in his official capacity have been dismissed, see Doc.

261.  Defendants deny all remaining allegations in Paragraph 8.

9.      Defendants state that the Dr. Donald Denney has been dismissed as a named Defendant

from this action by the Court by Order dated March 23, 2010, see Doc. 261, and

therefore, no response should be required to Paragraph 9.  To the extent a response is

required, Defendants admit that Dr. Denney is the Regional Psychology Administrator for

the North Central Region of the BOP.  Defendants admit that the Regional Psychology

Administrator is responsible for the delivery and oversight of psychological services in

the North Central Region.  Defendants further admit that Dr. Denney spoke with Plaintiff

on at least one occasion at the ADX.  Defendants state that the allegation that "Defendant

Denney is sued in his official and individual capacities" is Plaintiff's characterization of

Plaintiff's Complaint, to which no response is required.  To the extent a response is

required, Defendants state that all claims against Dr. Denney in his official and individual

capacities have been dismissed, <u>see</u> Doc. 261.  Defendants deny all remaining allegations in Paragraph 9.

10.   Defendants admit that Ron Wiley was the Warden of the ADX until July 2009. Defendants admit that the Warden of the ADX oversees the operation of the ADX. Defendants further admit that the Warden of the ADX makes all final decisions regarding whether an inmate should be placed in, or advance through, the Step-Down Program. Defendants admit that Mr. Wiley resides in Colorado.  Defendants state that the allegation that "Defendant Wiley is sued in his official and individual capacities" is Plaintiff's characterization of Plaintiff's Complaint, to which no response is required.  To the extent a response is required, Defendants admit that Mr. Wiley is sued in his individual capacity and state that all claims against Mr. Wiley in his official capacity have been dismissed, <u>see</u> Doc. 261.   Defendants deny any remaining allegations in Paragraph 10.

11.   Defendants state that Dr. Marie Bailey has been dismissed as a named Defendant from this action by the Court by Order dated March 23, 2010, <u>see</u> Doc. 261, and therefore, no response should be required to Paragraph 11.  To the extent a response is required, Defendants admit that Dr. Bailey is a Psychologist at the Federal Correctional Institution in Florence, Colorado and was formerly a Psychologist at the ADX.  Defendants admit that as a Clinical Psychologist, Dr. Bailey is responsible for providing assessment and evaluation, psychotherapy, and research/program evaluation to inmates and BOP staff. Defendants admit that Dr. Bailey resides in Colorado.  Defendants further admit that Dr. Bailey has conducted psychological reviews of Plaintiff in accordance with Special Housing Unit policy.   Defendants state that the allegation that "Defendant Bailey is sued

in her official and individual capacities" is Plaintiff's characterization of Plaintiff's

Complaint, to which no response is required.  To the extent a response is required,

Defendants state that all claims against Dr. Bailey in her official and individual capacities

have been dismissed, see Doc. 261.  Defendants deny all remaining allegations in

Paragraph 11.

12.     Defendants state that Dr. Paul Zohn has been dismissed as a named Defendant from this

action by the Court by Order dated March 23, 2010, see Doc. 261, and therefore, no

response should be required to Paragraph 12.  To the extent a response is required,

Defendants admit that Dr. Zohn is a Psychologist at the ADX.  Defendant admits that as a

Psychologist, Dr. Zohn is responsible for providing assessment and evaluation,

psychotherapy, and research/program evaluation to inmates and BOP staff.  Defendants

admit that Dr. Zohn resides in Colorado.  Defendants further admit that Dr. Zohn has

conducted psychological reviews of Plaintiff in accordance with Special Housing Unit

policy.  Defendants state that the allegation that "Defendant Zohn is sued in his official

and individual capacities" is Plaintiff's characterization of Plaintiff's Complaint, to which

no response is required.  To the extent a response is required, Defendants state that all

claims against Dr. Zohn in his official and individual capacities have been dismissed, see

Doc. 261.  Defendants deny all remaining allegations in Paragraph 12.

13.     Defendants state that Defendants Denney, Bailey, and Zohn have been dismissed from

this action and that Defendants Vanyur, Conley, Nalley, and Wiley, in their official

capacities, have been dismissed from this action, by the Court by Order dated March 23,

2010, see Doc. 261.  Defendants further state that the allegations in Paragraph 13 are

Plaintiff's characterization of Plaintiff's Complaint, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 13.

## FACTS

14.     Defendants admit the allegations in Paragraph 14.

15.     Defendants admit that from February 28, 1978, until November 18, 1980, Plaintiff was incarcerated at the United States Penitentiary ("USP") located in Leavenworth, Kansas ("LVN").  Defendants deny any remaining allegations in Paragraph 15.

16.     Defendants admit that Plaintiff was convicted of the murder of Danny Atwell in 1980.  Defendants state that the case United States v. Silverstein, 737 F.2d 864 (10th Cir. 1984) speaks for itself.

17.     Defendants admit the allegations in Paragraph 17.

18.     Defendants admit that in 1982, Plaintiff was convicted of Conspiracy to Murder and Murder for the murder of Robert Chappelle.  Defendants further admit that the murder of Robert Chappelle was racially motivated and sanctioned by the Aryan Brotherhood.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 18, and therefore deny.

19.     Defendants admit that Raymond Smith was a leader of the D.C. Blacks.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 19, and therefore deny.

20.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 20, and therefore deny.

21.     Defendants admit that in September 1982, Raymond Smith received an incident report. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 21, and therefore deny.

22.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 22, and therefore deny.

23.     Defendants admit that Plaintiff murdered Raymond Smith on September 27, 1982. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 23, and therefore deny.

24.     Defendants admit that Plaintiff murdered Correctional Officer Merle Clutts on October 22, 1983.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 24, and therefore deny.

25.     Defendants deny the allegations in Paragraph 25.

26.     Defendants admit the allegations in Paragraph 26.

27.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 27, and therefore deny.

28.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 28, and therefore deny.

29.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 29, and therefore deny.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 31, and therefore deny.

32.     Defendants deny the allegations in Paragraph 32.

33.     Defendants admit that Plaintiff's conditions of confinement in USP Atlanta ("ATL") did

        not allow Plaintiff physical contact with other inmates.  Defendants deny any remaining

        allegations in Paragraph 33.

34.     Defendants admit that Plaintiff's conditions of confinement in ATL minimized Plaintiff's

        physical contact with BOP staff.  Defendants deny any remaining allegations in Paragraph

        34.

35.     Defendants lack sufficient knowledge or information to admit or deny the allegations in

        Paragraph 35, and therefore deny.

36.     Defendants lack sufficient knowledge or information to admit or deny the allegations in

        Paragraph 36, and therefore deny.

37.     Defendants lack sufficient knowledge or information to admit or deny the allegations in

        Paragraph 37, and therefore deny.

38.     Defendants lack sufficient knowledge or information to admit or deny the allegations in

        Paragraph 38, and therefore deny.

39.     Defendants lack sufficient knowledge or information to admit or deny the allegations in

        Paragraph 39, and therefore deny.

40.     Defendants admit that there was and still is no air conditioning in the inmate housing

        units at ATL.  Defendants deny that there was no heating in the inmate housing units at

        ATL.  Defendants lack sufficient knowledge or information to admit or deny the

        remaining allegations in Paragraph 40, and therefore deny.

41.     Defendants deny the allegations in Paragraph 41.

42.  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 42, and therefore deny.

43.  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 43, and therefore deny.

44.  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 44, and therefore deny.

45.  Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 45, and therefore deny.

46.  Defendants admit that as early as April 1985 Plaintiff was enrolled in an art study course and was supplied with pastels and charcoal paper.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 46, and therefore deny.

47.  Defendants deny the allegations in Paragraph 47.

48.  Defendants admit the allegations in Paragraph 48.

49.  Defendants admit that while outside of his cell, Plaintiff came into contact with BOP staff.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 49, and therefore deny.

50.  Defendants admit that Plaintiff was transferred to a Special Assigned Cell at LVN on December 1, 1987.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 50, and therefore deny.

51.  Defendants deny the allegations in Paragraph 51.

52.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 52, and therefore deny.

53.     Defendants admit that the Special Assigned Cell at LVN had a bed, a sink, a shower, and a toilet.  Defendants deny any remaining allegations in Paragraph 53.

54.     Defendants admit that the Special Assigned Cell at LVN had no windows.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 54, and therefore deny.

55.     Defendants deny the allegations in Paragraph 55.

56.     Defendants admit that Plaintiff's conditions of confinement in the Special Assigned Cell at LVN did not allow Plaintiff physical contact with other inmates.  Defendants deny any remaining allegations in Paragraph 56.

57.     Defendants admit that Plaintiff's conditions of confinement in the Special Assigned Cell at LVN minimized Plaintiff's physical contact with BOP staff.  Defendants deny any remaining allegations in Paragraph 57.

58.     Defendants admit that while housed in the Special Assigned Cell at LVN, Plaintiff exercised without other inmates and took all meals without other inmates.  Defendants deny any remaining allegations in Paragraph 58.

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants admit that while housed in the Special Assigned Cell at LVN, Plaintiff was under video surveillance.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 61, and therefore deny.

62.     Defendants lack sufficient knowledge or information to admit or deny the allegations in
        Paragraph 62, and therefore deny.

63.     Defendants admit that while housed in the Special Assigned Cell at LVN, Plaintiff was
        provided with only indoor recreation.  Defendants deny any remaining allegations in
        Paragraph 63.

64.     Defendants admit that Plaintiff was housed in the Special Assigned Cell, which included
        an indoor recreation area, for 24 hours a day, for approximately one year.  Defendants
        deny any remaining allegations in Paragraph 64.

65.     Defendants lack sufficient knowledge or information to admit or deny the allegations in
        Paragraph 65, and therefore deny.

66.     Defendants deny the allegations in Paragraph 66.

67.     Defendants deny the allegations in Paragraph 67.

68.     Defendants admit that in approximately June 1989, Plaintiff was moved to a cell in the
        Special Housing Unit at LVN ("E Wing").  Defendants further admit that E Wing has a
        separate entrance.  Defendants further admit that E Wing is also known as the
        "Silverstein Suite."  Defendants lack sufficient knowledge or information to admit or
        deny the allegations in Paragraph 68, and therefore deny.

69.     Defendants deny the allegations in Paragraph 69.

70.     Defendants state that the term "substantially similar" in Paragraph 70 is undefined and
        Defendants lack sufficient knowledge or information to admit or deny the allegations in
        Paragraph 70 and therefore deny.

71.     Defendants deny the allegations in Paragraph 71.

-13-

72.     Defendants admit that Plaintiff's conditions of confinement in E Wing at LVN did not

allow Plaintiff physical contact with other inmates.  Defendants deny any remaining

allegations in Paragraph 72.

73.     Defendants admit that Plaintiff's conditions of confinement in E Wing at LVN minimized

Plaintiff's physical contact with BOP staff.  Defendants deny any remaining allegations in

Paragraph 73.

74.     Defendants admit that E Wing is divided into six areas: a cell area; an outdoor recreation

area; an indoor recreation area; a strip search area; a hallway; and a visiting room.

Defendants further admit that the areas are connected by solid metal doors with windows

that are remotely operated.  Defendants deny any remaining allegations in Paragraph 74.

75.     Defendants admit the allegations in Paragraph 75.

76.     Defendants admit that the outdoor recreation area is approximately 15' x 14'4".

Defendants admit the remaining allegations in Paragraph 76.

77.     Defendants admit that the outdoor recreation area has concrete walls and the roof is made

of wire mesh.  Defendants deny any remaining allegations in Paragraph 77.

78.     Defendants admit the allegations in Paragraph 78.

79.     Defendants admit the allegations in Paragraph 79.

80.     Defendants admit that while housed in E Wing at LVN, Plaintiff exercised without other

inmates and took all meals without other inmates.  Defendants deny any remaining

allegations in Paragraph 80.

81.     Defendants deny the allegations in Paragraph 81.

82.     Defendants admit that while housed in E Wing at LVN, Plaintiff was under video surveillance.  Defendants deny the remaining allegations in Paragraph 82.

83.     Defendants admit that Plaintiff was housed in E Wing – which included indoor and outdoor recreation – for 24 hours a day.  Defendants deny any remaining allegations in Paragraph 83.

84.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 84, and therefore deny.

85.     Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 85, and therefore deny.

86.     Defendants admit that by approximately 2001, Plaintiff was afforded 300 minutes of social telephone calls per month.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 86, and therefore deny.

87.     Defendants admit that in accordance with Special Housing Unit policy, psychological reviews of Plaintiff were conducted approximately every thirty days while Plaintiff was housed at LVN.  Defendants deny any remaining allegations in Paragraph 87.

88.     Defendants admit that Dr. Thomas White conducted Plaintiff's psychological reviews in accordance with Special Housing Unit policy from December 1987 until February 1989.  Defendants further admit that in March 1989, Dr. Denney began conducting Plaintiff's psychological reviews in accordance with Special Housing Unit policy.  Defendants deny any remaining allegations in Paragraph 88.

89.     Defendants admit that Dr. Denney's first position with the BOP was as a staff psychologist in August 1987.  Defendants further admit that Dr. Denney conducted

Plaintiff's psychological reviews in accordance with Special Housing Unit policy from March 1989 until July 2003. Defendants deny any remaining allegations in Paragraph 89.

90. Defendants deny the allegations in Paragraph 90.

91. Defendants deny the allegations in Paragraph 91.

92. Defendants admit that beginning in July 1996, the psychological reviews conducted in accordance with Special Housing Unit policy included a section assessing Plaintiff's "threat to others." Defendants further admit that from July 1996 through March 1999, Plaintiff's "threat to others" was judged to be high. Defendants further admit that between March 1999 and June 2005, Plaintiff's "threat to others" was judged to be low, moderate, and high. Defendants deny all remaining allegations in Paragraph 92.

93. Defendants admit the allegations in Paragraph 93.

94. Defendants admit that Plaintiff's access to art supplies increased over time. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 94, and therefore deny.

95. Defendants admit that Dr. Denney recognized that Plaintiff was actively engaged in art activities, and that fulfilled his creative side. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 95, and therefore deny.

96. Defendants deny the allegations in Paragraph 96.

97. Defendants admit that from November 17, 2002, to January 27, 2003, Plaintiff was housed in the Special Assigned Cell. Defendants deny all remaining allegations in Paragraph 97.

98.  Defendants admit that on January 27, 2003, Plaintiff was moved back to E Wing. Defendants deny all remaining allegations in Paragraph 98.

99.  Defendants admit the allegations in Paragraph 99.

100.  Defendants admit that Mr. Nalley made the decision to house Plaintiff on Range 13 with the concurrence of Mr. Vanyur.

101.  Defendants admit that Mr. Nalley, with the concurrence of Mr. Vanyur, made the decision to house Plaintiff on Range 13 because the physical layout of Range 13 was similar to the physical layout of E wing.  Defendants deny any remaining allegations in Paragraph 101.

102.  Defendants deny the allegations in Paragraph 102.

103.  Defendants deny the allegations in Paragraph 103.

104.  Defendants deny the allegations in Paragraph 104.

105.  Defendants admit that at the time of his transfer to the ADX, Plaintiff was not provided a hearing.  Defendants deny all remaining allegations in Paragraph 105.

106.  Defendants admit the allegations in Paragraph 106.

107.  Defendants admit the allegations in Paragraph 107.

108.  Defendants admit that the ADX is the most secure prison in the federal system. Defendants deny any remaining allegations in Paragraph 108.

109.  Defendants deny the allegations in Paragraph 109.

110.  Defendants deny the allegations in Paragraph 110.

111.  Defendants state that the term "substantially similar" in Paragraph 111 is undefined and Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 111 and therefore deny.

112.   Defendants deny the allegations in Paragraph 112.

113.   Defendants admit that Plaintiff's conditions of confinement in Range 13 at the ADX did not allow Plaintiff physical contact with other inmates. Defendants deny any remaining allegations in Paragraph 113.

114.   Defendants admit that Plaintiff's conditions of confinement in Range 13 at the ADX minimized Plaintiff's physical contact with BOP staff. Defendants deny any remaining allegations in Paragraph 114.

115.   Defendants admit the allegations in Paragraph 115.

116.   Defendants admit that while housed in Range 13, Plaintiff was moved between two cells. Defendants deny the remaining allegations in Paragraph 116.

117.   Defendants admit that the cells where Plaintiff was housed on Range 13 were separated from the other cells on Range 13 by a solid metal door with a window located in the hallway. Defendants further admit that the door was constructed after Plaintiff's arrival on Range 13. Defendants deny all remaining allegations in Paragraph 117.

118.   Defendants admit that the cells on Range 13 are approximately 95 square feet, not including the shower. Defendants further admit that the cells each contained a cement bed, a cement table, a sink, a toilet, and a shower. Defendants deny any remaining allegations in Paragraph 118.

119.   Defendants admit that in one of the cells on Range 13, Plaintiff had a mirror and a window. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 119, and therefore deny.

120.   Defendants admit that in the other cell on Range 13, Plaintiff had a window that was covered in mesh.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 120, and therefore deny.

121.   Defendants admit the allegations in Paragraph 121.

122.   Defendants admit that while housed on Range 13, Plaintiff was afforded outdoor recreation in one of two outdoor recreation areas connected to the cells via sallyports accessed by remotely operated doors.  Defendants deny all remaining allegations in Paragraph 122.

123.   Defendants admit that while housed on Range 13, Plaintiff received more than one hour of exercise per day, five days a week.  Defendants deny any remaining allegations in Paragraph 123.

124.   Defendants admit that the two outdoor recreation areas were approximately 342 square feet and 332 square feet and that the indoor recreation area was approximately 195 square feet.  Defendants further admit that the outdoor recreation areas did not have any equipment.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 124, and therefore deny.

125.   Defendants admit that while housed in Range 13 at the ADX, Plaintiff exercised without other inmates and took all meals without other inmates.  Defendants deny any remaining allegations in Paragraph 125.

126.   Defendants deny the allegations in Paragraph 126.

127.   Defendants admit that while housed in Range 13 at the ADX, Plaintiff was under video surveillance.  Defendants deny the remaining allegations in Paragraph 127.

128.   Defendants admit that Plaintiff was housed in Range 13 – which included indoor and outdoor recreation – for 24 hours a day.  Defendants deny any remaining allegations in Paragraph 128.

129.   Defendants deny the allegations in Paragraph 129.

130.   Defendants admit that Plaintiff was afforded 300 minutes of social telephone calls per month at LVN.  Defendants further admit that on Range 13, Plaintiff was afforded two 15-minute social phone calls per month.  Defendants deny all remaining allegations in Paragraph 130.

131.   Defendants admit that while housed on Range 13, Plaintiff was afforded five social visits per month.  Defendants deny all remaining allegations in Paragraph 131.

132.   Defendants admit the allegations in Paragraph 132.

133.   Defendants admit the allegations in Paragraph 133.

134.   Defendants admit that in accordance with Special Housing Unit policy, psychological reviews of Plaintiff were conducted approximately every thirty days while Plaintiff was housed on Range 13.

135.   Defendants admit that at the ADX no BOP staff enter the sallyport area of a cell without another staff member present who carries a baton.  Defendants deny all remaining allegations in Paragraph 135.

136.   Defendants deny the allegations in Paragraph 136.

137.   Defendants admit that Dr. Bailey conducted Plaintiff's Psychology Services Intake Screening on July 13, 2005.  Defendants deny all remaining allegations in Paragraph 137.

138.   Defendants admit that Dr. Bailey conducted a psychological review of Plaintiff in accordance with Special Housing Unit policy on August 15, 2007, and again on August 29, 2007.  Defendants further admit that at both August 2007 reviews, Plaintiff's "threat to others" was judged to be low.  Defendants deny any remaining allegations in Paragraph 138.

139.   Defendants admit that Dr. Zohn conducted Plaintiff's psychological reviews in accordance with Special Housing Unit policy from August 2005 to July 2007, and again from September 2007 to March 2008.  Defendants deny the remaining allegations in Paragraph 139.

140.   Defendants admit that Dr. Denney spoke with Plaintiff on at least one occasion at the ADX.  Defendants deny any remaining allegations in Paragraph 140.

141.   Defendants admit that Dr. Denney recognized that Plaintiff was actively engaged in art activities, and that fulfilled his creative side.  Defendants deny all remaining allegations in Paragraph 141.

142.   Defendants deny the allegations in Paragraph 142.

143.   Defendants deny the allegations in Paragraph 143.

144.   Defendants admit that when Plaintiff was removed from his cell, he was visually searched, placed in hand and leg restraints with a Martin Chain, and escorted by three officers, including a Lieutenant.  Defendants deny all remaining allegations in Paragraph 144.

145.   Defendants deny the allegations in Paragraph 145.

146.   Defendants deny the allegations in Paragraph 146.

147.   Defendants deny the allegations in Paragraph 147.

148.   Defendants admit the allegations in Paragraph 148.

149.   Defendants admit that D-Unit is a General Population Unit.  Defendants further admit that the cells in D-Unit are approximately 87 square feet and contain a concrete bed, concrete table, concrete stool, shower, sink, and toilet.  Defendants deny any remaining allegations in Paragraph 149.

150.   Defendants deny the allegations in Paragraph 150.

151.   Defendants admit that the cells on a particular range of D-Unit are located on one side of the hallway.  Defendants further admit that cells are separated from the hallway by two doors, one grilled and one solid with a window.  Defendants deny any remaining allegations in Paragraph 151.

152.   Defendants admit that the configuration of cells in D-Unit minimizes Plaintiff's physical contact with other inmates.  Defendants deny any remaining allegations in Paragraph 152.

153.   Defendants admit that the configuration of cells in D-Unit minimizes Plaintiff's physical contact with BOP staff.  Defendants deny any remaining allegations in Paragraph 153.

154.   Defendants admit that while housed in D-Unit at the ADX, Plaintiff takes all meals without other inmates.  Defendants deny all remaining allegations in Paragraph 154.

155.   Defendants admit that BOP policy provides that General Population inmates are afforded ten hours of out of cell recreation per week.  Defendants deny all remaining allegations in Paragraph 155.

156.   Defendants admit the allegations in Paragraph 156.

157.   Defendants deny the allegations in Paragraph 157.

158.   Defendants deny the allegations in Paragraph 158.

159.   Defendants admit that all indoor and outdoor recreation occurs in secure, single recreation areas.  Defendants further admit that some secure, single recreation areas are grouped together on large outdoor recreation yards.  Defendants deny any remaining allegations in Paragraph 159.

160.   Defendants admit that General Population inmates are escorted by two Correctional Officers when they are removed from their cells.  Defendants deny any remaining allegations in Paragraph 160.

161.   Defendants admit that General Population inmates have visiting hours on Thursday, Friday, Saturday, and Sunday, and that multiple inmates can have visitors at the same time.  Defendants deny any remaining allegations in Paragraph 161.

162.   Defendants admit that Plaintiff's daily management on D-Unit included special restrictions that were memorialized in memoranda approved by former Warden Wiley. Defendants deny any remaining allegations in Paragraph 162.

163.   Defendants deny the allegations in Paragraph 163.

164.   Defendants deny the allegations in Paragraph 164.

165.   Defendants admit that inmates in the General Population at ADX, including Plaintiff, are afforded two 15-minute social telephone calls per month.  Defendants deny any remaining allegations in Paragraph 165.

166.   Defendants admit that until June 30, 2008, Plaintiff attended inside recreation on lower A range and no other inmates were permitted to participate in inside recreation on lower A range at the same time.  Defendants deny any remaining allegations in Paragraph 166.

167.    Defendants admit that until June 30, 2008, Plaintiff attended outside recreation in one of the two outdoor recreation areas immediately in front of the control unit center. Defendants further admit that no inmates attended inside recreation on the range corresponding with these outside recreation areas at the same time.  Defendants deny any remaining allegations in Paragraph 167.

168.    Defendants admit that beginning on June 30, 2008, Plaintiff attended outside recreation either in one of the two outdoor recreation areas immediately in front of the control unit center or in the secure, single recreation areas on the large outdoor recreation yard. Defendants further admit that beginning on June 30, 2008, until January 2009, when Plaintiff was attending inside or outside recreation, other inmates were not placed in recreation areas to the immediate right, left, or front of Plaintiff.  Defendants deny any remaining allegations in Paragraph 168.

169.    Defendants admit that from April 4, 2008, until January 2009, Plaintiff was escorted by three staff members, including a Lieutenant, whenever he was moved to, or from, his cell. Defendants further admit that after January 2009 to August 2009, Plaintiff was escorted by one Correctional Officer and one Lieutenant when moved out of D-Unit.  Defendants deny any remaining allegations in Paragraph 169.

170.    Defendants admit that until August 2009, Plaintiff had visiting hours on Monday, Tuesday, and Wednesday, and that when Plaintiff had a visitor, no other visitors were permitted in the visiting room.  Defendants deny any remaining allegations in Paragraph 170.

171.   Defendants admit that until August 2009, in the event that Plaintiff required placement in Administrative Detention or Disciplinary Segregation, he would have been placed in Range 13.  Defendants deny any remaining allegations in Paragraph 171.

172.   Defendants admit that pursuant to BOP policy, through the Step-Down Program, as inmates at the ADX demonstrate periods of clear conduct and positive institution adjustment, it is possible for the inmate to progress from the General Population Units, through the Intermediate, Transitional, and Pre-Transfer Units, with increasing degrees of personal freedom and privileges at each stage, and be transferred out of the Step-Down Program to an open population institution.  Defendants deny any remaining allegations in Paragraph 172.

173.   Defendants state that Institution Supplement FLM 5321.06H(1), General Population and Step-Down Operations (May 15, 2008) has been rescinded.  Defendants admit that Institution Supplement FLM 5321.06H(1), General Population and Step-Down Operations (May 15, 2008) at 3, states:

Ordinarily, an inmate must have a minimum of 12 months clear conduct while housed in the ADX's General Population Units before being considered for placement in the Step-Down Unit Program.  An inmate must also actively participate in and complete all programs recommended by their unit team to be considered for placement in the Intermediate Unit.  Additionally, positive overall institutional adjustment, personal hygiene, and cell sanitation, as well as appropriate interaction with staff, will be major factors in the recommendation for placement in the Intermediate Unit. … The most critical factor in determining an inmate's readiness to and through the Step-Down Unit Program will be whether the factors, which originally lead to the inmate's placement at ADX have been sufficiently mitigated to indicate the inmate can function successfully in a less-restricted unit without posing a threat to the security or orderly running of the institution.

Defendants deny any remaining allegations in Paragraph 173.

174.    Defendants deny the allegations in Paragraph 174.

175.    Defendants admit that Institution Supplement FLM 5321.06I(1), CN01, General

Population and Step-Down Operations (Dec. 8, 2009), permits the Step–Down

Committee to consider many non-inclusive factors when determining whether an inmate

can safely function in a less-restrictive unit without posing a risk to institutional security

and good order; posing a risk to the safety and security of staff, inmates or others,

including the inmate himself; and/or posing a risk to public safety.  Defendants deny the

remaining allegations in Paragraph 175.

176.    Defendants admit that the Warden of the ADX makes all final decisions regarding

whether an inmate should be placed in, or advance through, the Step-Down Program.

Defendants deny all remaining allegations in Paragraph 176.

177.    Defendants admit that Plaintiff did not participate in the Step-Down Unit Program

described in BOP Institution Supplement FLM 5321.06I(1), CN01 while he was housed

on Range 13.  Defendants deny all remaining allegations in Paragraph 177.

178.    Defendants admit that as of the date of the filing of this Answer, Plaintiff has not been

approved for placement in the Step-Down Program.  Defendants deny all remaining

allegations in Paragraph 178.

179.    As of the date of the filing of this Answer, Defendants admit the allegations in Paragraph

179.

180.    As of the date of the filing of this Answer, Defendants admit the allegations in Paragraph

180.

181.    As of the date of the filing of this Answer, Defendants admit the allegations in Paragraph
181.

182.    As of the date of the filing of this Answer, Defendants admit the allegations in Paragraph
182.

183.    As of the date of the filing of this Answer, Defendants admit the allegations in Paragraph
183.

184.    Defendants deny the allegations in Paragraph 184.

185.    Defendants deny the allegations in Paragraph 185.

186.    Defendants deny the allegations in Paragraph 186.

187.    Defendants deny the allegations in Paragraph 187.

188.    Defendants deny the allegations in Paragraph 188.

189.    Defendants deny the allegations in Paragraph 189.

190.    Defendants deny the allegations in Paragraph 190.

191.    Defendants admit that Plaintiff's housing at ATL, the Special Assigned Cell at LVN, E
Wing at LVN, and Range 13 at the ADX did not allow Plaintiff physical contact with
other inmates.  Defendants further admit that D-Unit at the ADX minimizes Plaintiff's
physical contact with other inmates.  Defendants deny any remaining allegations in
Paragraph 191.

192.    Defendants admit that Plaintiff's housing at ATL, the Special Assigned Cell at LVN, E
Wing at LVN, Range 13 at the ADX, and D-Unit at the ADX minimize Plaintiff's
physical contact with BOP staff.  Defendants deny any remaining allegations in Paragraph
192.

193.  Defendants admit the allegations in Paragraph 193.

194.  Defendants admit that in conducting psychological reviews in accordance with Special
      Housing Unit policy, Dr. Denney, Dr. Bailey, and Dr. Zohn have completed the section
      "threat to others" by judging Plaintiff's threat to others as low, moderate, and high.
      Defendants deny any remaining allegations in Paragraph 194.

195.  Defendants deny the allegations in Paragraph 195.

196.  Defendants deny the allegations in Paragraph 196.

197.  Defendants deny the allegations in Paragraph 197.

198.  Defendants deny the allegations in Paragraph 198.

199.  Defendants deny the allegations in Paragraph 199.

200.  Defendants deny the allegations in Paragraph 200.

201.  Defendants deny the allegations in Paragraph 201.

202.  Defendants deny the allegations in Paragraph 202.

203.  Defendants deny the allegations in Paragraph 203.

204.  Defendants deny the allegations in Paragraph 204.

205.  Defendants deny the allegations in Paragraph 205.

206.  Defendants admit the allegations in Paragraph 206.

207.  Defendants admit the allegations in Paragraph 207.

208.   Defendants admit the allegations in Paragraph 208.

209.  Defendants admit that Dr. Conley was a member of the BOP Executive Staff from May
      2007 until July 2009.  Defendants deny any remaining allegations in Paragraph 209.

210.   Defendants admit that members of the BOP Executive Staff participate in meetings of the BOP Executive Staff.  Defendants further admit that Mr. Nalley and Mr. Vanyur were members of the BOP Executive Staff during the 2004 annual review of Plaintiff by the BOP Executive Staff.  Defendants deny all remaining allegations in Paragraph 210.

211.   Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 211, and therefore deny.

212.   Defendants admit that in fall 2005, the annual reviews of Plaintiff by the BOP Executive Staff were discontinued.  Defendants further admit that in June 2006, Plaintiff received his first in-person review by the BOP Executive Panel.  Defendants deny any remaining allegations in Paragraph 212.

213.   Defendants admit the allegations in Paragraph 213.

214.   Defendants admit the allegations in Paragraph 214.

215.    Defendants admit the allegations in Paragraph 215.

216.   Defendants admit that Dr. Conley was a member of the BOP Executive Panel from May 2007 until July 2009.  Defendants deny any remaining allegations in Paragraph 216.

217.   Defendants admit that the Warden of the ADX is not a member of the BOP Executive Panel.  Defendants further admit that former Warden Wiley was present at the reviews the Executive Panel conducted of Plaintiff at the ADX until April 2008.  Defendants deny any remaining allegations in Paragraph 217.

218.   Defendants deny the allegations in Paragraph 218.

219.   Defendants deny the allegations in Paragraph 219.

220.   Defendants deny the allegations in Paragraph 220.

221.   Defendants deny the allegations in Paragraph 221.

222.   Defendants deny the allegations in Paragraph 222.

223.   Defendants admit that the decision to move Plaintiff from Range 13 to D-Unit was made by Mr. Nalley and Dr. Conley in approximately December 2007.  Defendants deny all remaining allegations in Paragraph 223.

224.   Defendants admit the allegations in Paragraph 224.

225.   Defendants admit that Plaintiff's status was discussed at the BOP Executive Staff meeting in February 2008.  Defendants deny all remaining allegations in Paragraph 225.

226.   Defendants admit that 28 C.F.R. § 523.10(a) states: "The Bureau of Prisons awards extra good time credit for performing exceptionally meritorious service, or for performing duties of outstanding importance or for employment in an industry or camp."  Defendants further admit that the provisions of 28 C.F.R. § 523.10(a) do not apply to inmates sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act of 1984.  Defendants deny any remaining allegations in Paragraph 226.

227.   Defendants deny the allegations in Paragraph 227.

228.   Defendants deny the allegations in Paragraph 228.

229.   Defendants deny the allegations in Paragraph 229.

## CAUSES OF ACTION

## Claim 1

230.   Defendants herein incorporate their responses to the allegations in Paragraphs 1-229 above.

231.   Defendants state that the allegations in Paragraph 231 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 231.

232.   Defendants state that the allegations in Paragraph 232 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants state that the case law speaks for itself.

233.   Defendants state that the allegations in Paragraph 233 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 233.

234.   Defendants state that the allegations in Paragraph 234 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 234.

**Claim 2**

235.   Defendants herein incorporate their responses to the allegations in Paragraphs 1-234 above.

236.   Defendants state that because Claim 2 has been dismissed by the Court, <u>see</u> Doc. 261, no response should be required.  To the extent a response is required, Defendants state that the allegations in Paragraph 236 are a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 236.

237.   Defendants state that because Claim 2 has been dismissed by the Court, <u>see</u> Doc. 261, no response should be required.  To the extent a response is required, Defendants state that

the allegations in Paragraph 237 are a legal conclusion to which no response is required.

To the extent a response is required, Defendants state that the case law speaks for itself.

238.   Defendants state that because Claim 2 has been dismissed by the Court, see Doc. 261, no

response should be required.  To the extent a response is required, Defendants state that

the allegations in Paragraph 238 are a legal conclusion to which no response is required.

To the extent a response is required, Defendants deny the allegations in Paragraph 238.

239.   Defendants admit that at the time of his transfer to the ADX, Plaintiff was not provided a

hearing.  Defendants deny all remaining allegations in Paragraph 239.

**Claim 3**

240.   Defendants herein incorporate their responses to the allegations in Paragraphs 1-239

above.

241.   Defendants state that because Claim 3 has been dismissed by the Court, see Doc. 261, no

response should be required.  To the extent a response is required, Defendants state that

the allegations in Paragraph 241 are a legal conclusion to which no response is required.

To the extent a response is required, Defendants deny the allegations in Paragraph 241.

242.   Defendants state that because Claim 3 has been dismissed by the Court, see Doc. 261, no

response should be required.  To the extent a response is required, Defendants state that

the allegations in Paragraph 242 are a legal conclusion to which no response is required.

To the extent a response is required, Defendants state that the case law speaks for itself.

243.   Defendants state that because Claim 3 has been dismissed by the Court, see Doc. 261, no

response should be required.  To the extent a response is requires, Defendants admit that

Plaintiff did not participate in the Step-Down Unit Program described in BOP Institution

Supplement FLM 5321.06I(1), CN01 while he was housed on Range 13.  Defendants deny all remaining allegations in Paragraph 243.

244.   Defendants deny the allegations in Paragraph 244.

245.   Defendants state that because Claim 3 has been dismissed by the Court, see Doc. 261, no response should be required.  To the extent a response is required, Defendants state that the allegations in Paragraph 245 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 245.

**Claim 4**

246.   Defendants herein incorporate their responses to the allegations in Paragraphs 1-245 above.

247.   Defendants state that the allegations in Paragraph 247 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants state that the case law speaks for itself.

248.   Defendants state that the allegations in Paragraph 247 are a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 248.

249.   Defendants deny the allegations in Paragraph 249.

250.   Defendants deny the allegations in Paragraph 250.

251.   Defendants deny the allegations in Paragraph 251.

Any allegation contained in Plaintiff's Complaint which has not already been expressly admitted, denied, or otherwise responded to by Defendants is hereby denied.

## DEFENSES

1.      Plaintiff fails to state a claim upon which relief can be granted to Plaintiff against

Defendants.

2.      Plaintiff fails to state a <u>Bivens</u> claim under applicable law.

3.      Plaintiff's claims are barred in whole or in part by Plaintiff's failure to properly exhaust

his administrative remedies pursuant to 42 U.S.C. § 1997e(a).

4.      Plaintiff's claims are barred in whole or in part by Plaintiff's failure to comply with all

the requirements of the Prisoner Litigation Reform Act.

5.      The Court does not have jurisdiction over some or part of Plaintiff's claims.

6.      Plaintiff's claims may be barred in whole or in part by the applicable statute of

limitations.

7.      Defendant Vanyur is entitled to qualified immunity.

8.      Defendant Conley is entitled to qualified immunity.

9.      Defendant Nalley is entitled to qualified immunity.

10.     Defendant Wiley is entitled to qualified immunity.

11.     Defendants did not violate Plaintiff's Fifth Amendment rights.

12.     Defendants did not violate Plaintiff's Eighth Amendment rights.

13.     Defendants' actions were justified under federal law or otherwise proper under federal

regulations and BOP policies.

14.     Defendants did not act in any manner as to harm Plaintiff or violate his constitutional

rights.

15.     Defendants may be entitled to sovereign immunity.

16.     Defendants reserve the right to add defenses or affirmative defenses as warranted by

discovery.

WHEREFORE, having fully answered the Complaint, Defendants request that Plaintiff

take nothing by this action, that the Complaint be dismissed, and that judgment be entered for

Defendants, together with costs and such other relief as the Court deems appropriate in this case.

Respectfully submitted this 6th day of April, 2010.

DAVID M. GAOUETTE
United States Attorney

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Laura Rovner
lrovner@law.du.edu
Counsel for Plaintiff

Chris Synsvoll
Chris.Synsvoll@usdoj.gov
Counsel for BOP

I also hereby certify that on this 6th day of April, 2010, I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

None

s/ Marcy E. Cook
Marcy E. Cook
Assistant United States Attorney
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0171
Fax: (303) 454-0404
E-mail: marcy.cook@usdoj.gov
Counsel for Defendants