IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02471-PAB-KMT

THOMAS SILVERSTEIN,
      Plaintiff,
v.

FEDERAL BUREAU OF PRISONS, et al.,
      Defendants

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY (Doc. 283)**

---

Plaintiff hereby submits his opposition to Defendants' motion to exclude expert testimony.

## INTRODUCTION

For nearly thirty years, Defendants have held Mr. Silverstein in the most restrictive and isolated conditions in the country. As a result of these decades in extreme solitary confinement, Defendants have caused Mr. Silverstein to suffer serious and on-going physical and psychological harms, and to continue to be at substantial risk of additional serious harms. Despite knowing of these harms and risks, Defendants failed to mitigate Mr. Silverstein's conditions or even provide meaningful standards and reviews to provide him a way to progress out of isolation. As a result, Mr. Silverstein challenges the constitutionality of the prison conditions he has experienced over the last three decades, as well as the procedures that continue to hold him in those conditions.

In Defendants' Motion, they attempt to exclude the testimony of two of Plaintiff's expert witnesses: Dr. Craig Haney, a nationally recognized expert on the psychological impacts of isolation in prison; and Dr. Brie Williams, a medical doctor specially trained in geriatrics and aging in prison. Defendants' motion demonstrates a fundamental misunderstanding both of Eighth Amendment jurisprudence and of the law regarding expert witness testimony. At best, Defendants' arguments

1

may be proper cross-examination material at trial, but are not a basis to exclude expert testimony.

## RULE 702 STANDARD

Rule 702 "was intended to relax traditional barriers to the admission of expert witness testimony…[and, accordingly] mandates a liberal standard for the admissibility of expert testimony." *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1082 (D.Colo. 2006); *accord U.S. v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995). While the proponent of challenged expert testimony has the burden of establishing admissibility, "proponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate that their opinions are reliable.'" Fed. R. Evid. 702 adv. comm. notes (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994)). Reliability is distinctly different from absolute certainty, and requires only "a reasonably accurate conclusion as opposed to conjecture or speculation." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quotations omitted). The proponent need only show that "the witness has sufficient expertise…that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *U.S. v. Crabbe,* 556 F.Supp.2d 1217, 1221 (D. Colo. 2008). To be reliable "the expert [must] 'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Wilson v. Taser Intern., Inc.*, 07-1844-PAB-KLM, 2010 WL 3239488, *2 (D. Colo. 2010) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). Any "doubts about whether an expert's testimony is useful should generally be resolved in favor of admissibility." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

## PLAINTIFF'S CLAIMS

Plaintiff has two remaining claims in his case: an Eighth Amendment claim and a due process claim. As both of these claims are supported by testimony from Dr. Haney and Dr.

Williams, Defendants err in assessing relevance based solely on the Eighth Amendment.

To prevail on an Eighth Amendment claim, Plaintiff must establish: 1) that the condition is sufficiently serious, and 2) that Defendants acted with deliberate indifference to the serious condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficiently serious condition can be demonstrated either by showing that Plaintiff is harmed by the challenged conditions *or* that these conditions cause him a substantial risk of serious harm *or* that the conditions deprive him of a basic human need. *Id.*; *see also Helling v. McKinney*, 509 U.S. 25, 33-34 (1993). Here, Mr. Silverstein provides evidence that, as a result of his conditions, he has suffered and continues to suffer harms including: 1) psychological harms (including memory loss, hopelessness, despair, and depression); and 2) physical harms (sleep loss, inadequate access to medical care). (Doc. 319 at 20-27.) In addition, Mr. Silverstein provided evidence that his conditions cause him to be *at substantial risk* of other serious harms, again that are both: 1) psychological (continued memory loss, deterioration, psychological pain, suffering, and depression); and 2) physical (increased risk of injury and morbidity). (*Id.*) Finally, Mr. Silverstein provides evidence that he is denied the basic human needs of sleep and social interaction. (*Id.* at 20-22.) The second prong of an Eighth Amendment claim requires Mr. Silverstein to demonstrate that Defendants were aware of this risk and were deliberately indifferent to it. *Farmer*, 511 U.S. at 834. Mr. Silverstein provides evidence that Defendants knew of and disregarded these harms and risks. (Doc. 319 at 27-29.)

In addition, Mr. Silverstein claims that his due process rights have been violated. To allege a due process claim, a plaintiff must demonstrate: 1) that he has a liberty interest in avoiding the relevant conditions, meaning that the conditions constitute an atypical and significant hardship as compared to the normal incidents of prison life, and 2) that the processes in place to protect this interest are inadequate. *Wilkerson v. Austin*, 545 U.S. 209 (2005); *Toevs v .Reid*, __F.3d __, 2011 WL

3

2437782 (10th Cir. June 20, 2011). Mr. Silverstein presented evidence that his conditions for the past 28 years have constituted an atypical and significant hardship and that he has never received meaningful processes to evaluate his on going isolation. (Doc. 319 at 29-33.)

I.      **Dr. Craig Haney**

Defendants challenge what they assert are all of Dr. Haney's opinions[1] on the basis that they are both irrelevant and unreliable. (Doc. 383 at 4-10.) Neither of these arguments has merit.

### A. Dr. Craig Haney is qualified to testify on issues concerning solitary confinement and psychological harm.

Dr. Haney is a nationally recognized expert in psychology and corrections with nearly forty years of experience. (Haney CV, attached as Ex.1 at 1-3, 17-25.) He has a MA and PhD in psychology, both earned at Stanford University, and is a longtime Professor in the Psychology Department of University of California at Santa Cruz. (*Id.* at 1.) He is one of the leading national experts on the effects of solitary confinement and isolation in a correctional setting and has written books, book chapters, and numerous journal articles on the psychological impact of incarceration on those in custody. (*Id.* at 5-16.) He has visited numerous prisons, conducted field studies, and interviewed hundreds of prisoners. (*See* Haney Report, attached as Ex. 2 at 12.) Dr. Haney toured ADX as part of the "Entry onto Land" in this case (*id.* at 2), and also toured the facility on other occasions for other cases where he has acted as an expert (experiences he could explain, should he be required to do so, at an evidentiary hearing). In addition, he has been admitted to testify as an expert in approximately thirty cases involving the psychological effects of certain conditions, testimony similar

---

[1] While Defendants characterize their challenge as to Dr. Haney's testimony "in its entirety," they do not challenge many other relevant opinions and other testimony that he has provided including, *inter alia*: that Defendants were aware of Mr. Silverstein's harms; that there were and are no clear standards for altering Mr. Silverstein's conditions of confinement; that Mr. Silverstein's conditions are atypical; that Mr. Silverstein's lack of knowledge about when, if ever, he would be allowed human contact continues to cause him substantial psychological pain and is a hardship; and that Mr. Silverstein will have continued harms in the future that will manifest as he ages. *See generally* Ex. 2.

4

to what he is prepared to opine on in this case. (Ex. 1 at 29-31.) Specifically, he has on several occasions testified as an expert regarding the psychological effects of solitary confinement. *See Wilkerson v. Stalder*, 639 F.Supp.2d 654, 663 n.20, 665 (M.D. La. 2007); *Ruiz v. Johnson*, 154 F.Supp.2d 975, 985 (S.D. Tex. 2001); *Madrid v. Gomez*, 889 F. Supp. 1146, 1158, 1214-15 (N.D. Cal. 1995).

### B. Dr. Haney's opinion that long-term solitary confinement places human beings in substantial risk of serious psychological harm is relevant and reliable.

a. <u>This opinion regarding the risks from long-term solitary confinement is relevant.</u>

Defendants first claim Dr. Haney's opinion that long-term solitary confinement causes psychological harm is irrelevant because "[i]t does not address any of the elements of an Eighth Amendment, conditions of confinement claim."[2] (Doc. 383 at 5.) In making such an assertion, Defendants have misunderstood both the requirements of the Eighth Amendment and the due process clause. "The relevance test typically presents 'a low barrier to admissibility' that is met if the evidence is 'worth consideration by the jury.'" *Gell v. Town of Aulander*, 2009 WL 166379, *7 (E.D.N.C. Jan. 22, 2009) (quoting *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003)) (admitting general testimony about psychological effects by Dr. Haney, despite relevance challenge). Dr. Haney's testimony that long-term isolation is painful and causes harm easily satisfies this standard as it is relevant, and indeed, extremely significant, to both claims in this case.

The risks associated with long-term solitary confinement are directly relevant to Mr. Silverstein's Eighth Amendment claim. One means to establish that a condition is "sufficiently serious" is for a plaintiff to demonstrate that it places him at a substantial risk of serious harm. *Helling*, 509 U.S. at 33-36. In making a claim based on risk, a plaintiff need only show that the risk is substantial, not that it is certain. *See id.* For example, in claims regarding failure to provide adequate

---

[2] Defendants' definition of relevance with regard to the challenged expert testimony is whether it proves one or more elements of Plaintiff's claims. (*See* Doc. 383 at 4-5, 11-14). This definition has specifically been rejected as incorrect. *See Cook*, 580 F.Supp.2d at 1083-84 (citing cases).

sanitation, courts have repeatedly acknowledged that the risk of serious harm—even without certainty of future harm—are sufficient to establish an Eighth Amendment claim. *See, e.g.*, *Shannon v. Graves*, 257 F.3d 1164, 1169 (10th Cir. 2001) (blankets contaminated with sewage was substantial risk to human health); *Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (risk of physical assault, even without attack, was sufficiently serious). Risk need not be specific to the particular plaintiff in a case. *See Farmer*, 511 U.S. at 843 (risk sufficient whether for reasons personal to plaintiff of because all prisoners in a challenged situation face such a risk).

Here, Dr. Haney opines that social interaction is a human need, and the failure to provide it causes a substantial risk of serious harm. (Ex. 2 at 16-22.) He testifies about how prisoners—even in a multitude of variable isolation settings—generally experience the same negative psychological symptoms as a result of being isolated from meaningful contact with other human beings. (Ex. 2 at 6-9.) Dr. Haney further explains how these findings have led to numerous national and international organizations seeking limitations on the use of solitary confinement. (*Id.* at 20.)

In addition, Dr. Haney's testimony is relevant to Mr. Silverstein's due process claim. Both atypicality and hardship are elements necessary elements of a due process claim. *See Wilkinson*, 545 U.S. at 223. Dr. Haney's extensive experience touring prisons allows him to opine that Mr. Silverstein's conditions are atypical, and that they are the most extreme isolation he has observed in his long career. (Ex. 2 at 22.) Dr. Haney's testimony about the negative impacts of solitary confinement also is relevant to establishing the significant hardship that is endured by individuals housed in solitary confinement. (*id.* at 6-20), and the particular hardship for Mr. Silverstein of never knowing if and how he could obtain release from these conditions (*id.* at 49-58).

    b. <u>This opinion regarding the risks from long-term solitary confinement is reliable.</u>

It is unclear whether Defendants challenge the reliability of this opinion; under "Opinion 2"

Defendants appear to challenge Dr. Haney's opinion that long-tern isolation causes psychological harm by arguing that it is not reliable because it cannot be verified via testing. (Doc. 383 at 7-8.) Defendants are correct that Dr. Haney openly admits that a single study concerning the effects of solitary confinement would be both unethical and logistically impossible. (Haney, *The Social Psychology of Isolation: Why Solitary Confinement is Psychologically Harmful*, 181 Prison Serv. J. 12 (2009), attached as Ex. 3 at 13 n.8.) Defendants, however, fundamentally misunderstand the requirements of Rule 702, which allows expert testimony that is not verifiable by a single research study.

Reliability requires that the expert had sufficient facts and that the methodology used to reach the conclusion was accepted in the field. Fed. R. Evid. 702. Reliability can be established in numerous ways, including through observation, knowledge, skill, or experience. *Id.* Testing is only one means to establish reliability and is not a requirement to satisfy Rule 702; as noted:

> [s]ome types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.

Fed. R. Evid. 702 adv. comm. notes.

Dr. Haney had both sufficient facts and used reliable methodology to reach his opinion that solitary confinement causes harm. His opinion is based on a vast body of empirical literature, which includes numerous studies and research projects, conducted over decades. (Ex. 2 at 6-20.) To reach his conclusions, Dr. Haney both reviewed others' studies and conducted his own research. (*Id.*) From this multitude of studies, he discerned clear common traits and impacts of isolation that emerged. (*Id.*) Drawing conclusions from a variety of studies, often called a meta-analysis, is a common research methodology. *See Paoli*, 916 F.2d at 856-58 (overturning exclusion of expert testimony based on aggregate analysis). In the article cited by Defendants, Dr. Haney explains:

> [T]he myth continues to be perpetuated in some quarters that the psychological effects of enforced isolation have not been carefully enough studied and, as a result, too little is known about harmful consequences…I believe this view is misguided. In the admitted absence of a single perfect study of the phenomenon, a substantial body of published literature clearly documents the distinctive patterns of negative psychological effects that can and do occur when persons are placed in long term solitary confinement. This work has been reviewed in detail elsewhere and I will not belabor it here but will say that these broad patterns have consistently been identified in personal accounts, descriptive studies, and systematic research on solitary and punitive segregation. The studies have now spanned a period of over four decades, and were conducted in locations across several continents and by researchers with different professional expertise, ranging from psychiatrists, to sociologists and architects.

(Ex. 3 at 13.)

The reliability of Dr. Haney's methodology and ultimate conclusion are further supported because they have been subject of peer review and scholarly debate. *See* Fed. R. Evid. 702 adv. comm. notes (explaining that expression of opinion outside of litigation and peer review are two indicators of reliability). While Dr. Haney's opinion regarding solitary confinement and its effects is not universally accepted, this is not a requirement to satisfy Rule 702. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 2004) ("the plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted'"). Dr. Haney's opinion is reliable and will assist the factfinder in assessing the risk of harm and atypicality of Mr. Silverstein's isolation.

**C. Dr. Haney's opinion that Mr. Silverstein's extraordinary isolation causes him psychological harm and places him at risk of serious harm is relevant and reliable.**

   a. <u>This opinion that solitary confinement has and is harming Mr. Silverstein is relevant.</u>

Defendants claim that Dr. Haney's opinion that Mr. Silverstein experiences harm and is at further risk of harm as a result of his isolation is not relevant because it does not address Plaintiff's *current* conditions. (Doc. 383 at 6.) This allegation completely misstates Dr. Haney's testimony. While Dr. Haney focused on a ten-year period, he used this period as "representative" of Mr. Silverstein's harms. (Ex. 2 at 31). Dr. Haney specifically concluded that the harm was current and

8

on going: "[t]he evidence showed that Mr. Silverstein suffered, and continues to suffer, numerous forms of psychological harm. That harm includes *inter alia*, pain and distress, extreme anxiety, despair and hopelessness, depression, inability to concentrate, and cognitive impairment." (Ex. 17 to Doc. 319 at ¶ 36; *accord* Ex. 2 at 59-64 (noting current symptoms)). Dr. Haney's opinion was that Mr. Silverstein's conditions continue to place him at "grave risk of harm" is relevant to his claims.

In addition, Dr. Haney provides substantial and significant testimony concerning the second Eighth Amendment prong: deliberate indifference. Dr. Haney opines that mental health and other staff knew about Mr. Silverstein's suffering, and failed to respond reasonably to these concerns. (*See* Ex. 2 at 31-47.) Specifically, he notes that the records demonstrate Mr. Silverstein's reports of concern about his mental health, and staff's own observations about troublesome signs and symptoms in his affect and behavior, but demonstrate lack of action by the staff. (*Id.*) He also opines that prison officials knew of the risks of psychological harm and solitary confinement, explaining that "during the years that Mr. Silverstein was confined in isolation…dire warnings existed both in the psychological <u>and</u> legal literature about the potential adverse—dangerous— mental health consequences of placing persons in these places on a long-term basis." (*Id.* at 47-49.)

Finally, the testimony about Mr. Silverstein's harms—from the past and current circumstances—is directly relevant to his due process claim. Dr. Haney's testimony will assist the finder of fact in determining whether his conditions constituted an atypical and significant hardship.

> b. <u>Dr. Haney had sufficient facts for his opinion that Mr. Silverstein has and continues to suffer harm as a result of his isolation.</u>

Defendants also allege that Dr. Haney lacked sufficient facts or data for his opinion to be reliable. (Doc. 383 at 6-7.) This allegation is baffling. While it is true (and admitted by Dr. Haney) that he is not a psychiatrist, and thus, not qualified to offer an opinion about Mr. Silverstein's diagnosis, he is a psychologist and is sufficiently qualified to observe and form opinions about

psychological symptoms. Defendants provide no explanation why two interviews (approximately the same amount of time spent in interviews as Defendants' expert, Dr. Bursztajn) and his extensive record review are insufficient for him to draw conclusions about Mr. Silverstein's harms.

Defendants also allege that Dr. Haney did not observe his current conditions at the ADX. (Doc. 383 at 7.) This is simply untrue. Dr. Haney was part of the entry onto land and observed both Mr. Silverstein's conditions in Z-Unit and those in D-Unit (where he is currently housed). In addition, he has visited ADX at other times, as part of other cases where he is retained as an expert and has visited many solitary confinement units where the conditions were substantially similar.

  c. <u>Dr. Haney's opinion that Mr. Silverstein has and continues to suffer harm as a result of his isolation based on a reliable methodology.</u>

Defendants allege that Dr. Haney's opinion regarding Mr. Silverstein's harms and risk of harm is not subject to reliable testing.[3] In essence, Defendants argue because there is no way to establish with absolute certainty that solitary confinement caused harm to Mr. Silverstein (as the conditions cannot be repeated in a "test") the opinion is not reliable. (Doc. 383 at 8-9.) Again, this reflects a fundamental misunderstanding of the Rule 702 standard.

As an initial matter, Defendants claim that "[Dr.] Haney ignores that *other things* could have caused Plaintiff's 'psychological effects.'" (Doc. 383 at 8.) Defendants offer no actual evidence that these other harms were not considered. (*Id.* "[Dr.] Haney does not *appear* to have considered any other sources.") (emphasis added). Dr. Haney is well-aware of all of the possible alternative explanation, and even mentioned some specifically in his report. (*See, e.g.,* Ex. 2 at 19 (noting not all prisoners experience these symptoms discussed).) He is aware of concerns about individuals already suffering psychiatric disorders, effects caused by prison in general, and variable impact of solitary

---

[3] To the extent that Defendants challenge this opinion by challenging the literature on solitary confinement generally, Plaintiff's response is discussed in the section concerning "Opinion 1."

confinement on individuals. *See* Ex. 3 at 13-14. Despite Dr. Haney's awareness of these possibilities and his consideration of them, he still concludes that Mr. Silverstein's extreme isolation causes his harm and places him at grave risk of future harm. He used standard methodology to reach his conclusion, both relying on his record review and interviews with Mr. Silverstein, as well as using his experience and understanding of the psychological literature. As discussed above, "[a]bsolute certainty of result is not required for admissibility" under Rule 702. *U.S. v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993)(quotation omitted). "In any area of science or social science, but particularly in matters of the mind, expecting an expert to reach a conclusion without the slightest doubt as to its accuracy is exceedingly unrealistic." *Id.* The expert need only have considered alternative explanations for his or her interpretation to be reliable. *See* Fed. R. Evid. 702 adv. comm. notes.

Even though Dr. Haney's conclusion cannot be proven with absolute certainty, this does not render it *illogical*, as Defendants suggest. (Doc. 383 at 8.) To the contrary, it is hard to imagine a proposition that fits more squarely with common sense and logic. As stated in another case, that there is a "risk of mental harm from prolonged isolation…does not strike this court as rocket science." *McClary v. Kelly*, 4 F.Supp.2d 195, 208 (W.D.N.Y. 1998); *accord Davenport v. DeRobertis*, 844 F.2d 1310, 1313 (7th Cir. 1988) (Posner, J.). Indeed, the literature, as explained by Dr. Haney, bears out this exact point. Thus, when Mr. Silverstein—after decades in isolation—exhibits some of these exact harms found in isolated individuals, it is logical to conclude that these harms were caused in whole or part by his conditions of confinement. Thus, despite Defendants' unsupported characterizations, they fail to undermine Dr. Haney's conclusions, or their admissibility.

### D. Dr. Haney is not offering an opinion that Mr. Silverstein is a low risk of future dangerousness.

As stated at his deposition, Dr. Haney does not intend to offer the opinion that Mr. Silverstein presents a low risk of future dangerousness. (Haney Depo. Tr., Ex. 59 to Doc. 319 at 19:14-19.)

11

Dr. Haney does opine that age is the most reliable indicator of future dangerousness, basing this opinion on the literature regarding such evaluations. (*Id.* at 19:25-22:8.)

## II.     Dr. Brie Williams

Defendants challenge four of what they term as five opinions from Dr. Williams on the basis that these opinions are irrelevant.[4]  Notably, Defendants do *not* challenge the reliability of the opinions offered by Dr. Williams.  As discussed below, their claim that these opinions are irrelevant is incorrect as Dr. Williams's opinions are relevant to both the Eighth Amendment and due process.

### A. Dr. Brie Williams is qualified to testify on the harms and risks that Mr. Silverstein is currently exposed to and regarding the adequacy of his care.

Dr. Williams is board certified both in Internal Medicine and in Geriatrics. (Williams Report, attached as Ex. 4 at 1.)  For the past decade she has been a faculty member at UC San Francisco, and is responsible both for adult patient care and for training medical students. (*Id.*)  Dr. Williams is knowledgable regarding medical care in prison, and has assessed the medical care in several prisons across the country. (*Id.* at 2; *see also* Willaims CV, attached as Ex. 5.)  She is a specialist on aging in prison and provided expert testimony on the impacts of long-term isolation on individual health. *Wilkerson*, 639 F.Supp.2d at 664.

### B. Dr. Williams's opinions are relevant to Plaintiff's claims.

Defendants claim that Dr. Williams's testimony is not relevant.  Largely, Defendants base their argument on the exact wording for the headers provided in Dr. Williams's report, and not on her actual opinions as recited in the text of the report, her deposition, and her declaration.  Dr. Williams's opinions are relevant to the first prong of Mr. Silverstein's Eighth Amendment claim, that

---

[4] Though Defendants do not challenge the first opinion—that some of Mr. Silverstein's medical care was compliant with standard of care—this opinion is not one that Plaintiff would independently (should Dr. Williams's other opinions be excluded) seek to put on the record.  Thus, effectively, if the challenged opinions were excluded, Dr. Williams would be excluded from testifying.

12

his conditions place him at a substantial risk of serious harm. In trying to argue that her opinions are not relevant, Defendants rely on an inaccurate and strained understanding of the Eighth Amendment elements. (Doc. 383 at 11 (describing Elements 1 & 2).) As an initial matter, they offer no legal support for this formulation. Further, their description overlooks a basic tenet of Eighth Amendment jurisprudence: any conditions that cause an individual to be "at substantial risk of serious harm" satisfy the objective requirement, as they are denying an individual of the basic human need of safety. *Helling*, 509 U.S. at 33. Thus, Dr. Williams need only provide testimony that Mr. Silverstein's conditions place him at substantial risk of serious harm, she need not—as suggested by Defendants (Doc. 383 at 11-12)—either demonstrate a deprivation of medical care, nor confirm that Mr. Silverstein's medical conditions are caused by his isolation.

Dr. Williams's testimony is relevant because she opines that, in light of Mr. Silverstein's age and complaints, his conditions of confinement substantially increase his risk of serious harm. Specifically, Dr. Williams opines that: 1) Mr. Silverstein's conditions have prevented him from obtaining adequate care in the past and thus put him at substantial risk of not receiving needed care in the future (Ex. 4 at 26-27; *accord* Williams Decl., attached as Ex. 6 ¶¶ 26-34); and 2) that Mr. Silverstein's conditions increase the risk of serious harm from dangerous conditions he already exhibits—mainly cognitive impairment and sleeplessness (Ex. 4 at 21-22; *accord* Ex. 6 ¶¶ 10-25.)

In addition, Dr. Williams provides testimony that Mr. Silverstein suffers from numerous conditions, about which Defendants are aware. (*See, e.g.* Ex. 4 at 9-15.) In addition, based on her report and other reliable sources, she provides evidence regarding deliberate indifference, opining that Defendants are aware that Mr. Silverstein's conditions substantially increases his risk of serious harm. Dr. Williams makes recommendations that to provide further testing, provide increased medical access, and to remove him from his isolation and that doing so would decrease the

13

substantial risks he currently experiences. Defendants' failure to follow these recommendations can be assessed by the factfinder, to determine if such failings rise to the level of deliberate indifference.

Finally, Dr. Williams's testimony is relevant to Mr. Silverstein's due process claim. Dr. Williams provides information about the increased health risks associated with isolation (Ex. 6 ¶¶ 10-25), as well as past instances where his isolation prevented or delayed adequate treatment (Ex. 4 at 26-27). These past instances are relevant to whether his conditions currently and in the past constituted an atypical and significant hardship (in particular during the relevant time period for damages).

### C. Dr. Williams's opinions are reliable because they are based on her medical training, experience and relevant research data.

Though Defendants do not challenge the reliability of Dr. Willaims's opinions, the reliability of her opinions is established herein.

Dr. Williams opined that Defendants continue to expose Mr. Silverstein to a substantial risk of serious harm by their consistent failure to allow him timely and adequate access to medical care. (Ex. 6 ¶ 26.) She provides testimony that this failing is a serious condition, particularly as one ages. (*Id.* ¶¶ 8, 30.) Dr. Williams bases her opinion on her training and experience, as well as her review of Mr. Silverstein's medical files, and, specifically on the many serious instances of deferred or lacking treatment. (*Id.* ¶¶ 32-38.) She opined that "[t]hese delays appear to result from a hesitation to take Mr. Silverstein into a less controlled setting," (*id.* ¶¶ 32-33), a conclusion she bases on the medical record, including numerous notations where medical staff document specifically that examination was "deferred [due to placement in] lockup seg unit" (Ex. 4 at 14-15). Dr. Williams opines that this lack of access continues currently. (Ex. 6 ¶ 34) She bases this opinion on Defendants' extreme delay in providing Mr. Silverstein with a screening for his potentially life-threatening heart condition, which needlessly exposed him to risk of sudden death (*id.* at ¶ 29), as well as their failure to provide recommended treatment for his painful, bleeding hemorrhoids (*id.* at ¶ 31). Specifically, Dr.

14

Williams testifies that: "[g]iven how much time and how much external pressure it took for Mr. Silverstein to access an appropriate evaluation for an urgent, serious medical concern (symptomatic heart murmur), I remain concerned that any future medical condition requiring urgent or emergent assessment by a specialist may meet the same delay." (*Id.* at ¶ 30.)

Dr. Williams also offers the opinion that Mr. Silverstein's conditions substantially increase his risk of serious harm because they exacerbate several dangerous conditions he already experiences. (*Id.* at ¶¶ 11-12, 17, 20, 24.)  Based on her review of the medical record, Mr. Silverstein's self-report to her and other experts, and screening tests, Dr. Williams testifies that Mr. Silverstein experiences insomnia, anxiety, and indications of cognitive and memory impairment.  (*Id.*)  Based on study data and her experience, Dr. Williams opines that these conditions are serious conditions and, as individuals age, increase one's risk of falls, morbidity, and mortality.  (*Id.* at ¶¶ 12, 17-19.)  Dr. Williams opines that Defendants have not taken available steps to reduce this risk to Mr. Silverstein, including providing neuropsychiatric evaluation (*id.* at ¶ 15), or relocating Plaintiff to a different housing environment where there is more natural light and more interaction with people (*id.* at ¶ 21).

## CONCLUSION

Accordingly, this Court should deny Defendants' Motion to Exclude Expert Testimony. Should the Court believe additional information is necessary to satisfy the admissibility requirements for Dr. Haney's or Dr. Williams's testimony, Plaintiff requests a Rule 702 hearing on these issues.

Respectfully submitted on August 19, 2011:

STUDENT LAW OFFICE
/s/ Brittany Glidden
Brittany Glidden & Laura L. Rovner
2255 E. Evans Ave, Suite 335
Denver, CO 80208
Tel: (303) 871-6140/Fax: (303) 871-6847
Email: bglidden@law.du.edu

## CERTIFICATE OF SERVICE

  I hereby certify that on this 19th day of August 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email address:

Marcy Elizabeth Cook
Marcy.Cook@usdoj.gov

Juan Villasenor
Juan.Villasenor@usdoj.gov

Chris Synsvoll
Chris.Synsvoll@usdoj.gov

            /s/ Brittany Glidden
            Brittany Glidden