IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02471-PAB-KMT

THOMAS SILVERSTEIN,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

    Defendants.

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY**

---

Defendants, through counsel, reply in support of their motion to exclude the expert testimony of Craig Haney and Brie Williams, two of Plaintiff's experts.

In his response, Plaintiff concedes that Haney will not be offering Opinion 3 (that Plaintiff poses a low risk of dangerousness). Doc. 387 at 11-12. Plaintiff, however, argues that Haney's Opinions 1 and 2, and Williams' opinions are admissible under Fed. R. Evid. 702.

Plaintiff, as the proponent of the expert testimony, "bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). As shown below, he has failed to meet that burden.

**I.  Plaintiff Cannot Show that Haney's Opinions 1 and 2 Are Reliable.**

Plaintiff argues that Haney's Opinion 1 (solitary confinement causes negative psychological effects) and Opinion 2 (Plaintiff "has experienced *most* of the classic adverse reactions to the pain of his isolation") are reliable for several reasons. As discussed below, none have merit.

To assess reliability of an expert's opinion, the Tenth Circuit looks to four non-exclusive factors:

> (1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community.

*Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).

### A. Haney Failed to Employ a Reliable Methodology to Render his Opinions.

Plaintiff asserts that Haney employed a reliable methodology because Opinions 1 and 2 are based on "empirical literature," including relying on studies and research projects, and his own research. Doc. 387 at 7. He also argues that Haney's methodology, which consists of drawing conclusions from numerous studies — "meta-analysis" being the term of art — is reliable. *Id.*

These contentions are without merit. Plaintiff cannot show that Opinions 1 and 2 are reliable for several reasons. First, while meta-analysis may be a reliable methodology in general, Haney failed to conform to its requirements and, thus, failed to reliably apply it here. "Meta-analysis involves combining the results of different … studies done by other scientists, and re-analyzing the combined data to see if the data, *in toto*, renders different results than the individual studies done with a smaller data sample." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 856 (3d Cir. 1990).

In his report, Haney derived overarching principles from several studies to conclude that solitary confinement causes negative psychological effects. Doc. 387-2 at 7-21. He then took Opinion 1 and applied it to Plaintiff's circumstances in Opinion 2. But Haney did not "re-analyz[e] the combined data [from those studies] to see if the data … renders different results than the individual studies done with a smaller data sample." *In re Paoli*, 916 F.2d at 856. Rather, Haney took the studies' conclusions as true, and did not perform an independent analysis of the data undergirding them. Nor did Haney explain in any detail (or at all) the specific studies' findings, or data. Doc. 387-2 at 7-21. He simply provided lengthy string-cites in footnotes and told the reader to "see" the articles cited. *Id.* at n.6.

Second, Dr. Harold J. Bursztajn, a psychiatrist and Defendants' expert, highlighted in a rebuttal report to Haney's opinions the above shortcomings in methodology.[1]  Ex. C.  For instance, Dr. Bursztajn noted that Haney failed to explain whether the researchers in the studies relied on prisoner self-reports, or objective indicators of the prisoners' mental conditions; whether comparison controls were employed between the studies' subjects to assess a "baseline" comparison before and after their alleged solitary confinement; or whether there was a self-selection problem with the subjects of the studies.  *Id.* at 3.  Without any of this crucial information, Plaintiff cannot show that Haney reliably followed the meta-analysis methodology.  And, by all indications, Haney did not follow it because he failed to show his analysis of the studies' data.

Lastly, Plaintiff's assertion that Haney's meta-analysis method as outlined in his report is reliable because it has been peer-reviewed is wholly unsupported.  Doc. 387 at 8.  There is no citation to Haney's report or to other social scientists who can state that Haney's methodology in generating his opinions has been subject to peer-review.  *Cf. Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993).  Accordingly, Plaintiff cannot show that the meta-analysis, as carried out by Haney, is reliable.

    **B.**    **Haney Failed to Consider Alternative Explanations for Plaintiff's Symptoms.**

Plaintiff also argues that Haney did, in fact, consider alternative explanations for Plaintiff's psychological symptoms because he was "well-aware" of those explanations.  Doc. 387 at 10.  That is, Plaintiff denies that Haney committed the "false cause" logical fallacy (also known as *post hoc ergo propter hoc*).[2]  This argument fails.  Haney's opinions are unreliable because he failed to *consider* (not

---

[1] The Court may consider this rebuttal report because in making determinations regarding the admissibility of expert testimony, it is not bound by the rules of evidence.  Fed. R. Evid. 104(a).

[2] Further, Plaintiff does not dispute that Haney committed the formal logical fallacy of the undistributed middle.  Doc. 383 at 8-9.  His response, however, is that Haney's opinions, while not

3

just be aware of) alternative explanations for Plaintiff's symptoms; instead, he simply concluded that the conditions of confinement must have caused them.

As Dr. Bursztajn notes in his rebuttal report, it is "impossible to prove causation without ruling out reasonable alternative hypotheses such as the existence of preexisting impairments in a selected population." Ex. C at 3. Haney, however, did not do so, and there are several — unexplored — alternative hypotheses for Plaintiff's symptoms. For instance, Haney ignored Plaintiff's "long history of antisocial behavior," which would have led him to discover that Plaintiff was a "deeply troubled individual long before he experienced" restrictive conditions of confinement. *Id.* at 8. Nor did Haney consider the possibility that Plaintiff "may have benefited from the reduced stimulation and interpersonal conflict made possible by the circumstances of his confinement." *Id.* Similarly, Haney failed to "explain how the periods of frustration and despair that [Plaintiff] reportedly experienced are any different from what an inmate service a life sentence in the general population might experience." *Id.* at 6.

This Court recently commented on the logical fallacy exemplified by Haney's opinions and methodology, noting that "application of such false reasoning can blind one to alternative possibilities, many of which will be as or more plausible." *Wilson v. City of Lafayette*, 2010 WL 1291518, *4 (D. Colo. March 29, 2010). It is apparent that Haney was so blinded and, as Dr. Bursztajn notes, that he began "his assessment of [Plaintiff] having already concluded that solitary confinement was inhumane, unjustifiable, and extremely harmful and then searched the records for evidence to confirm this hypothesis." Ex. C at 5.

---

absolutely certain, fit "squarely with common sense and logic." Doc. 387 at 11. That is circular reasoning. And charging ahead, Plaintiff commits the same logical fallacy that Haney did, declaring that when Plaintiff exhibits the same "harms" than other "isolated individuals," it follows that the conditions of confinement caused them. *Id.*

C.  **Haney Did Not Employ a Reliable Methodology to Assess Plaintiff's Alleged Psychological Effects from His Confinement.**

In his response, Plaintiff stresses that Haney, as a psychologist, is qualified to opine that Plaintiff "continues to suffer harm as a result of his isolation." Doc. 387 at 9-10. (*See* Doc. 387-2 at 30-47.) He also contends that Haney's culling of a "representative" 10-year period of Plaintiff's psychological symptoms (between the "late" 1980s and 1990s) constitutes sufficient facts and data to conclude that Plaintiff suffered psychological harm — at that time — from his conditions of confinement. *Id.* at 8-9. And he argues that Haney did address his current conditions of confinement and that Plaintiff is still experiencing psychological harm from the present conditions. *Id.* at 9.

These contentions are without merit. First, because Haney conceded he is not qualified to perform a forensic psychological evaluation of Plaintiff, he cannot reliably express an opinion that Plaintiff was at substantial risk of psychological harm as a result of his conditions of confinement. While Haney agreed that Plaintiff did not have a major mental illness, he still ventured to provide an "arm-chair" evaluation, observing that "it would be a mistake to infer from" the previous conclusion that Plaintiff was not exposed to harm. Doc. 387-2 at 29.

Essentially, Haney admitted he is not qualified to perform a forensic psychological evaluation, but still assigned a cause to Plaintiff's supposed adverse symptoms. What Haney did here is very similar to what he did in another case in which the counsel who retained him *conceded* that Haney was not qualified to give such opinions. *See Gell v. Town of Aulander*, 2008 WL 5545036, *12 (E.D.N.C. Dec. 1, 2008), *recommendation adopted in relevant part by* 2009 WL 2009 WL 166379 (Jan. 22, 2009). There, as here, Haney sought to opine on "the psychological effects of incarceration on [the plaintiff] resulting from his wrongful arrest in 1995 and his conviction and death sentence …"; and on "the seriousness and lasting psychological effects of a long period of confinement on [the

plaintiff], who was exonerated and released to free society after some 9 years of incarceration." *Id.* But faced with a motion to exclude the testimony, the plaintiff's "counsel conceded that Haney is not a clinical psychologist and [that he] could not establish a clinical causal relationship between [plaintiff's] incarceration and his specific damages suffered." *Id.* Accordingly, because Haney admitted he is not a clinician, his opinions that purport to assign a cause to Plaintiff's adverse psychological effects should be excluded.

Second, Haney's arm-chair evaluation is unreliable because he failed to meet professional standards of data gathering, data analysis and opinion formulation. Ex. C at 10. Dr. Bursztajn explained that Haney failed to "provide a valid examination data, obtained in a methodologically reliable manner, indicating that [Plaintiff] actually has suffered such damage" resulting from his conditions of confinement. *Id.* at 7. For instance, Haney "uncritically" believed Plaintiff's self-reports regarding his symptoms (such as loss of ability to converse with others) and disregarded "the many indications of a relatively normal ability to converse found in" the reports of the other experts, including Haney's. *Id.* Nor did Haney consider whether Plaintiff's conditions of confinement have had a "beneficial effect of enabling [him] to develop an internal focus and to learn to function independently of others' approval…." *Id.*

Third, Haney's assessment of Plaintiff's alleged harm also suffers from the false cause fallacy. As Dr. Bursztajn noted, Haney failed to explore alternative causes for the symptoms, noting that Haney "neither compares [Plaintiff's] adjustment while in solitary confinement to the adjustment of prisoners serving life terms in the general population, nor attempts to compare [Plaintiff's] adjustment and functioning to that which [Plaintiff] experienced prior to being placed in solitary confinement." Ex. C at 8.

Fourth, Haney's opinions as to the adverse psychological effects Plaintiff allegedly suffered are based on insufficient facts and data. He failed to justify why he limited his data to a 10-year period, which he deemed — without explanation — as "representative" of Plaintiff's conditions. Doc. 387-2 at 18. At the time, Plaintiff was *not* confined at ADX, Doc. 296, Fact ¶ 31, and Haney did not explain how, if at all, his conditions at that time are similar to his present conditions.

Moreover, while Plaintiff argues that Haney did address his current conditions of confinement at the ADX, that is incorrect. Haney merely recounted Plaintiff's "self-reported" symptoms. As explained by Dr. Bursztajn, that is not sound methodology if Haney was attempting to assign a cause for those symptoms. In sum, Haney's opinions should be excluded.[3]

### III.    WILLIAMS' NEW OPINIONS ARE NOT RELIABLE OR RELEVANT.

In their motion, Defendants challenged Williams' opinions as expressed in her expert report. Doc. 383 at 11-15. In his response, Plaintiff did not defend those opinions; instead, he lobbied for Williams' new, previously undisclosed opinions set forth in her *declaration* that was filed in opposition to summary judgment. Doc. 387 at 12-15.

By doing so, Plaintiff implicitly concedes that Williams' original opinions are inadmissible because they are not relevant. Doc. 383 at 11-14. Indeed, in neither her report nor her deposition did Williams state that Plaintiff's conditions of confinement *caused* a deprivation of a basic human need, or that they caused him to be "at substantial risk of serious harm." Doc. 383 at 11-14. Causation is an essential element of an Eighth Amendment conditions-of-confinement claim: "The relevant inquiry is whether *an official's acts or omissions were the cause — not merely a contributing factor —* of

---

[3] Plaintiff's argument that Haney's opinions are relevant to the procedural due process claim because his "experience touring prisons allows him to opine that [Plaintiff's] conditions of confinement are atypical," Doc. 387 at 6, is without merit. There is no evidence to support the assertion that Haney's touring of prisons allows him to opine about the "atypical" nature of certain conditions of confinement.

the constitutionally infirm condition." *Tafoya v. Salazar*, 516 F.3d 912, 922 (10th Cir. 2008) (emphasis added). Thus, Williams' opinion that Plaintiff's conditions of confinement "*contributed* to inadequate access to medical care," and "*posed* delays in care, Doc. 387-4 at 26-27 (emphasis added), are not relevant to the claim.

The issue, then, is how to deal with Williams' new, undisclosed opinions as expressed in her declaration. In their summary judgment reply, Defendants argued that the Court must disregard the declaration because it contradicts her previous deposition testimony, creating a "sham issue of fact." Doc. 353 at 11 n.5 (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). Plaintiff, essentially, is attempting to sandbag Defendants. *Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003). Defendants still believe that the new opinions in the declaration should be ignored because it is prejudicial to have Williams shift direction mid-stream by offering new opinions, which are based on the same information she had available when she issued her report.

But even if the Court considered Williams' new opinions, they are not reliable, or relevant, for several reasons. Her new opinions are that Plaintiff's conditions of confinement (1) have increased his serious risk of harm or injury, and "may be causing" insomnia and anxiety, Doc. 387-6 ¶¶ 10-25; and (2) have "exposed him to increased risk of serious harm because he has received substandard" medical care, such as experiencing delays in medical examinations for his heart murmur, *id.* ¶¶ 26-34.[4]

The opinion on memory impairment, insomnia and anxiety is unreliable. Williams' methodology is not set out and she relies on insufficient facts and data. Fed. R. Evid. 702. She simply concludes, without explanation, that individuals who are "isolated and lonely are at higher

---

[4] It appears that Plaintiff no longer intends to offer Williams' opinion that a delay in hepatitis C treatment results in substantial increase in risk of significant harm for him. Doc. 387-6 ¶ 38. Accordingly, the opinion should be excluded as Defendants argued. Doc. 383 at 12-13.

risk of anxiety" and that insomnia "can be caused by isolation loneliness and decreased physical activity." *Id.* ¶¶ 20, 24.  (She, however, does not assign a cause to cognitive impairment.)  Williams does not describe Plaintiff's conditions of confinement, whether any relevant peer-reviewed studies exist linking such conditions to Plaintiff's symptoms, or whether her opinion is generally accepted in the scientific community.  *MagneTek*, 360 F.3d at 1210.  She simply leaps from Plaintiff's self-reported symptoms of insomnia and anxiety to assign a cause.

Further, because Williams did not consider whether other factors could have caused Plaintiff's symptoms, her opinions suffer from the false cause fallacy.  It is possible, for example, that Plaintiff's *age* could be the cause of his insomnia or cognitive impairment, and that his paranoid disposition — or his supposed regret for his crimes — could be the cause of his anxiety.  Ex. C at 6.  Williams failed to consider any alternative causes, and her opinion is not reliable.

Williams' opinion that Plaintiff's conditions of confinement have exposed him to an increased risk of serious harm because he has received "substandard access to medical attention and care" is irrelevant and unreliable.[5]  Williams failed to rely "upon sufficient facts and data" when rendering the opinion.  Fed. R. Evid. 702.  While in her *March 2011* declaration she acknowledges knowing that in February 2010 Plaintiff had an echocardiogram, she did not consider the results of the same.  Doc. 387-6 ¶ 29.  On February 4, 2010, a Pueblo, Colorado, cardiologist did a stress echocardiogram for Plaintiff.  Doc. 296-10 at 12-13, 82-84.  The cardiologist, however, did not recommend any further treatment.  *Id.* at 13.  He found, *inter alia*, "trivial aortic valvular sclerosis," and "trivial mitral, tricuspid and pulmonic regurgitation."  *Id.* at 84.  Williams did not consider, or review, these findings, nor did she explain how they would have affected her opinion.

---

[5] This opinion contradicts Williams' previous opinion that Plaintiff's conditions merely "contributed" to a delay in medical care.  Doc. 387-4 at 27.

Further, Williams failed to explain whether the standard she employed to judge whether medical care is "substandard" is generally accepted in the scientific community. In her deposition, she explained that *her standard* was as follows: "if there's something that is persistent and is causing pain and suffering and is not resolving despite your efforts or is befuddling you despite your efforts and it's not adding up, then it's time to refer to somebody who can provide some clarity on the situation." Doc. 353-2 at 122-23. There is no evidence that this is the proper standard. In addition, the opinion is not reliable because Williams did not express it within the requisite degree of medical certainty, as physicians typically do. *Cf.* Ex. C at 2 ("It is my forensic neuropsychiatric opinion, which I hold to the requisite degree of forensic neuropsychiatric certainty …").

Lastly, the opinion is not relevant. Williams' personal standard as expressed in her testimony is inapplicable to an Eighth Amendment claim. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Nor does Williams address whether the "substandard" access to medical care occurred because of legitimate penological objectives, as the Supreme Court requires in an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In sum, the motion to exclude expert witness testimony should be granted. Haney's and Williams' opinions should be excluded.

    Respectfully submitted,

    JOHN F. WALSH
    United States Attorney

    s/Juan G. Villaseñor
    JUAN G. VILLASEÑOR
    MARCY E. COOK
    Assistant United States Attorneys
    United States Attorney's Office
    1225 Seventeenth Street, Suite 700
    Denver, Colorado 80202
    Telephone: (303) 454-0185
    E-mail: juan.villasenor@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

bglidden@law.du.edu
lrovner@law.du.edu
marcy.cook@usdoj.gov
rraghunath@law.du.edu

I also hereby certify that on the same date noted above I have mailed or served the foregoing document to the following non-CM/ECF participant(s) in the manner (mail, e-mail, etc.) indicated by the nonparticipant's name:

None.

s/Juan G. Villaseñor
JUAN G. VILLASEÑOR
Assistant United States Attorney